THOMAS S. KIERNAN

*v.*

THE BUSH TEMPLE OF MUSIC COMPANY *et al.*

*Opinion filed October 23, 1907.*

1. LANDLORD AND TENANT—*a lessee is presumed to have known provisions of building ordinances as well as lessor.* A lessee of a theater building is presumed to know, as well as the lessor, the provisions of existing building ordinances, and if he is not ignorant as to the construction of the building and there is no misrepresentation by the lessor in that regard, the fact that the city, under its police power, interrupted the lessee's possession because of a violation of the building ordinances cannot be regarded as a breach of the lessor's implied covenant of quiet enjoyment.

2. SAME—*when lessee's remedy is at law.* Where the lessee's possession of a theater building is interrupted because of the lessee's violation of a provision of the building ordinances of the city in using movable scenery, the lessee cannot rely upon a breach of the lessor's covenant to furnish him a first-class amusement license as ground for enjoining the lessor from enforcing payment of rent for the interrupted period, where the use of movable scenery has nothing to do with the amusement license but only with the construction of the building; and if the lessee has been damaged by the lessor's failure to provide such license his remedy is at law.

3. INJUNCTION—*when lessor will not be enjoined from enforcing payment of rent.* The lessor of a theater building will not be enjoined from enforcing payment of rent for a term including a period for which the lessee's possession had been interrupted, where, so far as appears from the bill, the interruption was caused by the city authorities, acting under their police power, for a violation of an ordinance by the lessee.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. W. MACK, Judge, presiding.

This is an appeal from the judgment of the Appellate Court affirming a decree of the circuit court in sustaining a demurrer to and dismissing the appellant's bill for want of equity.

The allegations of the bill necessary to an understanding of the questions herein involved are substantially as follows:  On and prior to April 30, 1902, Mary J. Bush, B. Frank Bush and William L. Bush, trustees and executors of the estate of William H. Bush, deceased, owned four lots in the city of Chicago.  The title to three of them they obtained by virtue of the will of William H. Bush, deceased; the title to the other they obtained by purchase, as trustees.  On the said 30th day of April, 1902, the premises were improved with a building called the Bush Temple of Music, a part of which was adapted to theater purposes.  The portion of the building thus arranged consisted of an auditorium, with its furniture, a stage, equipments therefor, and entrances to and exits from said auditorium and stage.  On said April 30, 1902, said trustees above mentioned executed to the Bush Temple of Music Company, a corporation, a ninety-nine year lease on the real estate and buildings thereon.  On the 28th of October, 1902, the Bush Temple of Music Company leased to appellant "the auditorium and stage of the Bush Temple of Music of Chicago, lighted and heated, when needed, by the party of the second part (appellant) for evening and afternoon performances, for a term commencing November 24, 1902, and ending June 27, 1903, both inclusive, with the exception of Sundays during said term, and Tuesdays and Fridays, up to seven o'clock P. M., (except when a holiday falls on either of said days,) during said term, together with stock, scenery and equipment contained in said auditorium and stage, with a first-class amusement license extending during said term, and to furnish printed programs.  No seat for any performance during said term conducted by the party of the second part shall be sold for less than twenty-five cents (25c), and all plays produced by the party of the second part shall be of a high class and equal to those produced by any of the local stock companies in Chicago, and no burlesque, minstrel or vaudeville shows shall be produced dur-

ing the term of this lease or any renewal thereof." The lease authorized appellant to erect upon the stage anything necessary for carrying on his business, and in the event anything so erected should have the effect of increasing the rate of insurance, appellant was to pay the increased amount of insurance. The lease provided for a renewal by appellant for a term of two years, commencing the fourth week in August, 1903, and extending to the third week in June, 1905, for an annual rental of $9000. The lease was renewed at the expiration of the first term for two years. The renewal lease was substantially the same in its terms, so far as the questions here involved are concerned, as the original lease, except that it included Sundays and the rent to be paid was $14,000 per year, payable quarterly in advance.

The bill also alleges that appellant, during the entire period covered by his first lease, and up to March 14, 1904, of the period covered by the renewal, believed the Bush Temple of Music Company owned the premises and building, and paid all rent to it, and that on said day the attorney for appellees informed appellant the Bush Temple of Music Company had conveyed its interests to Mary Jane Bush, B. Frank Bush and William L. Bush, trustees under the will of William H. Bush, deceased, and upon investigation the appellant found there had been recorded in the recorder's office, December 15, 1902, a quit-claim deed under date of September 30, 1902, purporting to convey from the Bush Temple of Music Company the premises to the parties above named. The bill further alleges that on the same day said attorney, as agent for Mary J. Bush, B. Frank Bush and William L. Bush, and also for the Bush Temple of Music Company, informed appellant that such proceedings had been had as that the premises then belonged in fee to Mary J., B. Frank and William L. Bush as individuals, and it is averred in the bill that the Bush Temple of Music Company owns no property or assets whatever, and has no interest in said auditorium and stage nor in the real estate or improve-

ments thereon, and no interest in the lease or extension thereof.

The bill further alleges that just prior to January 2, 1904, the city of Chicago discovered that the premises leased to appellant had not been constructed in accordance with the requirements of certain ordinances of said city, which are made a part of the bill, and by virtue of its police powers, after notice to the Bush estate, closed the auditorium and theater. On the 18th and 25th days of January, 1904, the city council of the city of Chicago passed ordinances amending ordinances theretofore passed relating to theaters and places of public amusement, and on the last named date adopted an order or resolution that persons, firms or corporations operating theaters who would agree to make such alterations as were necessary to comply with the ordinances not later than September 1, 1904, should be permitted to open and operate their theaters upon certain conditions therein described, upon giving bond to the city in the sum of $25,000, conditioned for the performance of the requirements of the ordinances within the time named. On the 27th of January, 1904, the Bush Temple of Music Company, by B. F. Bush, president, addressed a communication "to the honorable theater commissioners, city," requesting an early inspection of the Bush Temple Theater, and stated it was desired to comply with the resolution of the council passed January 25, and agreed to put the theater in such condition by September 1, 1904, as would comply with the ordinances. On February 6, 1904, Mary J., B. Frank and William L. Bush, as principals, and John Gerts, as surety, executed the bond required by the order or resolution of the council, and on the same day the bond was approved and permission given to open the theater. The bill alleges that appellees, upon the closing of the theater by the city, took possession of it for the purpose of putting it in such condition as to comply with the ordinances and kept possession of it until the 10th day of February, 1904, when appellant

229 — 32

was again let into possession to operate the theater, under the permission and authority of the city, until its ordinances were complied with. The bill further alleges that November 30, 1903, appellant paid the Bush Temple of Music Company $3500, which was to be paid by the terms of the lease for the second quarter of the year 1903 and 1904, and that he had paid all rent due prior thereto in accordance with the terms of said lease, and charges that appellees failed to furnish him a first-class amusement license, as they were required to do by the lease, for the period beginning January 2, 1904, up to the time of filing the bill, and that they had not complied with the terms of their bond before mentioned. The bill further charges that the Bush Temple of Music Company is under the complete control, management and direction of Mary J., B. Frank and William L. Bush, who are the officers and directors of said corporation, and that said individuals are, and have been since the beginning of the controversy which resulted in this suit, represented by counsel, who appears for them in this court as their attorney; that said attorney, acting for appellees, informed appellant that it was their intention to not conform to the ordinances and the conditions of their bond, and that they would not make the changes and alterations in the demised premises necessary to comply with the ordinances and the conditions of their said bond. The bill alleges that upon appellees' filing the bond before mentioned, the city assigned two firemen to attend performances given in the theater by appellant but that appellees refused to pay for their services, and the city was threatening to revoke the permission under which the theater was being operated unless said firemen were immediately paid for their services. The bill concludes as follows:

"23. That notwithstanding the exclusion of your orator from the possession and use of said demised premises from the said second day of January, 1904, until the tenth day of February, 1904, and notwithstanding the said defendants

have, and each of them has, failed to furnish your orator a
first-class amusement license for said premises during the
period aforesaid, and notwithstanding that your orator's
damages, arising from the failure of your orator's lessor,
under said demise, to observe, perform, fulfill and keep the
covenants and conditions in said demise contained on the
lessor's part therein to be performed, observed, fulfilled and
kept, are largely in excess of rent claimed to be due, and
notwithstanding the said defendants refuse to comply with
the terms of said bond as to the payment of firemen and their
intention not to make the necessary changes and additions
required in said demised premises to make them conform
to said ordinances, has demanded of your orator that your
orator pay to the said Bush Temple of Music Company,
without abatement of any kind, the full rent reserved in said
lease, viz., the sum of thirty-five hundred dollars ($3500),
for and in respect of the third quarterly installment of rent
payable under said lease for the year 1903-04, and to enforce
said payment the said defendants have caused the said de-
fendant the Bush Temple of Music Company to serve upon
your orator a notice in writing, which is in the words and
figures following, namely:

"*To Thomas S. Kiernan:*

"You will please take notice that unless you pay the rent due
from you for the Bush Temple auditorium within five days from the
service of this notice on you, your lease for said auditorium will be
terminated.

(Seal)               BUSH TEMPLE OF MUSIC CO.,
                              B. F. Bush, *Pres.*"
CHICAGO, ILL., *March 19, 1904.*

—And the said defendants, by their aforesaid agent, for the
purpose of compelling your orator to pay said sum of $3500
without any adjudication by any court of competent juris-
diction in the premises, have threatened that unless the de-
mand in said notice be complied with within the period
therein mentioned the said Bush Temple of Music Company
shall and will, on the expiration of said period, shut off the
light and heat contracted and agreed in and by said lease to

be furnished to the said demised premises during the term thereof and of the extension thereof, as aforesaid.

"24. That the said defendant the Bush Temple of Music Company is wholly irresponsible, and if compelled to look to the said Bush Temple of Music Company in any other way than by way of recoupment or set-off against the rent payable under said lease and extension thereof for your orator's aforesaid damages, your orator will be absolutely without remedy to recover the same.

"25. That if said defendants, or any of them, should execute the threat of the said defendant Henry S. Wilcox to shut off the light and heat from said demised premises, the effect thereof would be to completely destroy the business of your orator, which he has built up at a large expense in money and labor on his part and would cause him irreparable damage.

"26. That the rights of your orator will be unduly prejudiced and your orator will be irreparably damaged unless the said defendants, and each of them, their attorneys, agents and servants, be immediately and without notice to them, or any of them, restrained and enjoined from attempting in any manner to forfeit said lease and extension thereof or to declare the same ended, without adjudication by a court of competent and final jurisdiction, upon due notice to your orator, authorizing the same, and until the further order of this court, after such adjudication, from shutting off from said demised premises light and heat, and from suffering or permitting the electric or heat plants which now do furnish and heretofore have furnished light and heat to said demised premises to suspend operation, and from in any manner interfering with, impeding, molesting or hindering your orator in the prosecution of his business in the said demised premises, as provided in and by said demise."

The bill prayed: "(1) That the defendants, or such of them as are responsible under the lessor's covenants in the demise, specifically perform the covenant to furnish appel-

lant with a first-class amusement license for the demised premises during the rest, residue and remainder of the term; (2) that the defendants be decreed to comply with the conditions named in their bond given to the city within the period therein mentioned, and put the premises in such condition that a first-class amusement license may be issued; (3) that an account may be taken of the appellant's damages, and that the amount found due be decreed to be satisfied out of the rent reserved under the lease or other property of the trust; (4) that defendants be enjoined from forfeiting the lease and from cutting off light and heat, from impeding, molesting or hindering appellant in the prosecution of his business in the demised premises."

By an amendment to his bill appellant charged that after the city closed the theater, as averred in the bill, B. Frank Bush obtained from the box office the license theretofore furnished by the Bush Temple of Music Company, which the original bill charged purported to be a first-class amusement license for the operation of the theater, and that said license was not a first-class amusement license but was a second-class amusement license, issued by the city October 20, 1903.

Section 99 of the ordinances of said city relating to the subject of theater and amusement licenses in force, as alleged in the bill, at that time, was as follows:

"(99) *Classification for license.*—For the purpose of providing for the licensing and taxing of theatricals, shows, amusements and all public exhibitions for gain, in a just and equitable manner, the same are hereby divided into five classes, which shall be known as the first, second, third, fourth and fifth, as follows: (1) All entertainments of a dramatic or operatic character, including lectures, public readings and recitations and exhibitions of paintings or statuary, shall belong to and be known as entertainments of the first class; (2) concerts or other musical entertainments, panoramas, performances of any feats of jugglery, sleight-

of-hand or necromancy, and exhibitions of any natural or artificial curiosities, shall belong to and be known as entertainments of the second class."

Another amendment specifies the items going to make up the total amount of damages appellant claims to have sustained by reason of the alleged failure of appellees to comply with the terms of the lease.

McARDLE & McARDLE, for appellant.

HENRY S. WILCOX, (JESSE WILCOX, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The theory of appellant's bill relating to the right claimed by the appellees to turn off the light and heat from the theater and determine the lease for non-payment of rent is, that the lease bound the lessor to furnish appellant with an auditorium and stage so constructed that appellant would be authorized, under the ordinances of the city, to use movable scenery on the stage in giving performances. Section 164 of the building ordinances of the city is as follows:

"Sec. 164. Buildings of class 4 embrace all buildings in which no movable scenery is used upon the stage thereof. Class 5 embraces all buildings in which movable scenery is used."

Section 176 prescribes the floor level of the auditorium in buildings of both classes. Section 182 prescribes the construction of the stage upon which movable scenery is to be used. Section 184 provides for a flue-pipe over the stage in buildings of class 5. Section 185 provides for an automatic sprinkler in buildings of class 5.

There is no direct averment in the bill that the lessor knew or understood appellant desired or intended to use movable scenery on the stage, and that he was leasing it for that purpose and with that understanding. Counsel argue

that as the lease was for an auditorium and stage, "together with stock, scenery and equipment contained in said auditorium and stage," and fixed the minimum price at which seats should be sold, stipulated that burlesque, minstrel or vaudeville shows should not be given in the theater, and provided that all plays produced therein should be of a high class, equal to those produced by any other of the local stock companies of the city of Chicago, and required appellant to provide all scenic equipment, and furnished him a carpenter shop in which to produce it, and further bound the lessor to furnish appellant a first-class amusement license, it necessarily follows the use of movable scenery would be required and was contemplated by the parties to the lease, and that the covenants of said lease bound the lessor to furnish the appellant an auditorium and stage so constructed that under the ordinances appellant would be permitted to use movable scenery. Appellant contends that the lessor knew when and how the building, stage and auditorium were erected and constructed, and that he had a right, in taking the lease, to assume that it was so constructed that he would be authorized to carry on and conduct such performances as were contemplated by a first-class amusement license, and with the use of movable scenery on the stage.

There is no averment in the bill when the building and theater were constructed. The allegation is, "that on said last mentioned day, viz., the 30th of April, 1902, said premises were improved with a building called the Bush Temple of Music, * * * and part of said building was adapted to theater purposes." The ordinances of 1898, under which the bill alleges the theater was closed in January, 1904, were by section 176 made to apply only to buildings of "new construction or re-construction or alteration, or improvement of existing buildings." It is impossible to determine from the allegations of the bill when the building had been erected and the auditorium and stage constructed and equipped. If this had been done prior to 1898, then the ordinances of 1898

relating to such buildings would not apply. If it was constructed after 1898, appellant cannot be heard to say he did not know that there were ordinances prohibiting the use of movable scenery, for the reason that he was as much charged with knowledge of the ordinances as the owner of the building. There is no averment of the bill that appellant did not know how the auditorium and stage were constructed, or that the Bush Temple of Music Company made any false representations to him in that regard, upon which he relied and by reason of which he accepted the lease.

We have above set out the substance of the averments of the bill as to the leasing to and use by appellant of movable scenery, and we cannot agree with appellant that these averments must be construed to be allegations that the lease necessarily contemplated the use of movable scenery. The lease did not mention movable scenery, nor is there anything contained in it from which it must necessarily be inferred that movable scenery was leased or contemplated being used. The covenant of the lessor to furnish appellant a first-class amusement license is of no value as an aid in determining the character of the scenery leased and to be used. Clauses 1 and 2 of section 99 of the ordinance above quoted are the provisions relating to the classification of entertainments as first and second-class. It will be seen from this ordinance that appellant's right to use movable scenery did not depend upon whether his license was first-class or second-class. The kind of scenery he was authorized to use was determined by the construction of the auditorium and stage, and not from whether the license was first-class or second-class. It is not claimed by the bill that appellant's possession was disturbed on account of the class of his license. No license could have authorized him to carry on his business in a building not constructed and equipped in accordance with the requirements of the ordinances, and appellant's contention is that the city of Chicago took possession of the theater, under its police powers and by virtue of the ordinances, be-

cause the construction did not comply with said ordinances, and not because the lessor had furnished him with a second-class license. If appellant was damaged in any way on account of the failure of the lessor to furnish him a first-class amusement license his remedy is at law. It must be conceded that the lease impliedly covenanted with appellant for the quiet enjoyment of the demised premises, but if he could under any circumstances resort to a court of equity to set off against the rent damages sustained by reason of a violation of those covenants by some one claiming under a superior right, it would be necessary for the averments of the bill to show that his possession was disturbed by some one other than the public authorities of a city, under their police powers, on account of a violation of the ordinances by the lessee. We agree with the conclusion of the Appellate Court, stated in its opinion in the following language:

"Section 176 of the building ordinance, by its terms, applies only to buildings constructed or repaired after the ordinance took effect. Sections 182, 184 and 185 contain no such provision, but by their terms apply to buildings theretofore as well as to those thereafter constructed. There is in the bill no allegation as to when the building in question was constructed, nor that the lessee did not know, when the lease was executed, that it was constructed after the building ordinance of 1898 took effect. The lessee, equally with the lessor, must be presumed to have known of the provisions of the building ordinance in force when the lease was executed. Whether the floor level of the auditorium was within the limits of the first story of the building, as required by section 176; whether the stage was constructed as required by section 182; whether there was a flue-pipe over the stage, as required by section 184; and whether the building was provided with automatic sprinklers, as required by section 186, were all matters that could be readily seen, and there is no averment in the bill that complainant did not know, when he executed the lease, the facts in relation to the

construction of the building. No covenant on the part of the lessor can be implied that the lessee should be permitted to use the demised premises in violation of the building ordinance. Under the ordinances, set forth in the bill as exhibits thereto, if the closing of the theater of the complainant by the city of Chicago was rightful, it was rightful because the complainant had used and was using movable scenery in a building so constructed that the use of movable scenery therein was prohibited by the building ordinance, and gave the city authorities the right to close the theater. We do not think that the disturbance of the lessee's enjoyment of the demised premises thus occasioned can be held a breach of the lessor's implied covenant for the quiet enjoyment of the demised premises by the lessee, or that it gave to the lessee any legal claim against the lessor for the rent paid in advance, or for damages sustained by him by reason of the interruption of his business by such closing."

In our opinion the bill did not state a case authorizing the relief prayed in a court of equity, and the judgment of the Appellate Court affirming the decree of the circuit court in sustaining the demurrer and dismissing the bill for the want of equity is affirmed.     *Judgment affirmed.*