## Fannie R. Sloss, Defendant in Error, v. August F. Brockman, Plaintiff in Error.

### Gen. No. 16,409.

1. TRIAL—*statement by court.* Where the question of constructive eviction from a residence because of sewer gas is raised, a statement by the court that "sewer gas has no odor as I understand," is improper.

2. EVIDENCE—*of expert on effect of sewer gas on human system.* Where on an issue as to whether or not illness was caused by sewer gas, evidence is given describing the symptoms of the illness of certain parties claimed to be affected thereby, the testimony of an expert physician as to the effect of sewer gas on the human system should not be excluded.

3. LANDLORD AND TENANT—*duty to keep premises in a tenantable condition.* The landlord of a residence is bound to keep the premises in proper repair to render them tenantable as a residence.

4. LANDLORD AND TENANT—*constructive eviction.* Whether the failure of the landlord to keep the premises in proper repair amounts to a constructive eviction is a question of fact for the jury.

5. LANDLORD AND TENANT—*constructive eviction.* Where there has been a constructive eviction the tenant is discharged from the payment of rent subsequent to such eviction though advance rent be past due.

6. LANDLORD AND TENANT—*instructions.* An instruction relative to the question of constructive eviction that the surrender of the key "cuts no figure" is error.

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in this court at the March term, 1910. Reversed and remanded. Opinion filed June 17, 1912.

B. M. SHAFFNER, for plaintiff in error.

SIMEON STRAUSS and IRA E. STRAUSS, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The defendant in error, hereinafter called plaintiff, under date of February 17, 1909, leased to the plaintiff in error, hereinafter called defendant, "to be used only as a residence, viz: the residence known and described as No. 4203 Grand boulevard, together with the furnishings contained therein," for the term beginning March 6, 1909, and ending April 30, 1910, at the rate of $125.00 per month, payable in advance on the first day of each month. The lease, among other provisions, contained the following: "It is understood and agreed between the parties hereto that the party of the first part" (the plaintiff) "shall make all repairs necessary during the term of this lease." The defendant went into possession of said premises under said lease on said March 6, 1909, but moved therefrom July 10, 1909. The plaintiff moved back into the said premises October 5, 1909, and in November following brought suit against the defendant for $375.00 for rent for the months of July, August and September and certain articles claimed to be missing from the said premises; but with one exception offered no evidence to support her claim for the articles alleged to be missing. The jury returned a verdict finding the issues for the plaintiff and assessing her damages at the sum of $375.00, and the court entering

judgment on the verdict, the defendant comes here on writ of error.

The defense was constructive eviction, and by reason thereof the defendant abandoned the premises. The defendant introduced testimony tending to prove that there was sewer gas in the said premises; that the plaintiff's agent in charge and control of the said premises was repeatedly notified of same and requested to make the necessary repairs of alleged defective plumbing, but did not do so; that the defendant's wife and other members of the household became seriously ill, and by reason of the said sewer gas causing said premises to be unfit and untenantable as a residence the defendant was forced to move therefrom. The plaintiff denied there was sewer gas in said premises. Some of the witnesses for the defendant testified they knew what sewer gas was, and that it had an odor and they knew it existed in said premises by the odor therein. Witnesses for the plaintiff testified they had made an examination of the premises at the time in question, and there was no sewer gas in the premises, and some said there was no odor to sewer gas; and one witness, a city plumbing inspector, testified that sewer gas may or may not have an odor. During the examination of a witness for the defendant as to sewer gas the court said: "Sewer gas has no odor as I understand it." This statement was improper, for it concerned a disputed material circumstance going to the issues to be passed upon by the jury, and the remark of the court would naturally have great weight with the jury in their consideration of the testimony as to whether there was in fact sewer gas in the said premises.

Testimony was given describing the symptoms of the illness of certain members of the household, and the defendant called Dr. Herbst, who testified that he was a regular licensed physician for ten years and had made a study of the effect of sewer gas on the

human system; and he was then asked to state the effect sewer gas had on the human system, to which the plaintiff objected and her objection was sustained. The testimony of the doctor was clearly admissible as tending to show whether the illness of said persons as claimed was caused by sewer gas. The court later stated that it was not shown that the said persons were affected by sewer gas and struck out the testimony as to the illness of the members of the defendant's household. The defendant did not claim to have been ill. The court instructed the jury, in part, as follows: "There is no evidence as to sickness occurring to the defendant from sewer gas. Any such evidence you may have heard here is stricken out, because all people are liable to get sick, and we can't attribute all the sickness of this time of the year to sewer gas, and all such evidence must be disregarded by you entirely."

The general doctrine of eviction as arising from the "failure of a landlord to make necessary repairs on the demised premises may be succinctly stated as follows: When the premises become untenantable by reason of the failure of the landlord to do what is lawfully required of him, the effect is eviction, which permits the tenant to abandon the premises." 11 Am. & Eng. Ency. of Law (2nd ed.), p. 478, and authorities there cited. "While it is clear that breach of the covenant on the part of the landlord by failing to make repairs will not, ordinarily, furnish ground for the tenant to resist the payment of rent while he continues to occupy the premises, yet it is held that if, for lack of repairs, the premises are rendered useless for the purpose for which they were leased, as by failing to keep the flumes appurtenant to a mill in repair, such default on the part of the landlord may amount to an eviction and the tenant will be justified in abandoning the premises and refusing to pay rent for the unexpired term." Taylor's Landlord and Ten-

ant, vol. 1, sec. 330, and authorities there cited. Other authorities to the same effect are McCardell v. Williams, 19 R. I. 701; Piper v. Fletcher, 115 Iowa 263. In the cases of Leonard v. Armstrong, 73 Mich. 577, and Bradley v. Goicowria, 67 Howard's Pr. 76, it was held that the sewer gas in the premises in question rendering the premises untenantable, there was a constructive eviction, and the tenants having abandoned the premises were relieved from the further payment of rent.

"Eviction necessarily being the result of an intended, willful, wrongful act, it must be by a willful omission of duty, or a commission of a wrongful act." Barrett v. Boddie, 158 Ill. 479. It is clear that under the lease the plaintiff was bound to keep the premises in proper repair to render them tenantable for a residence, the use and purpose for which they were leased by the defendant. Whether the premises became untenantable for the uses and purposes for which they were rented because of a failure of the plaintiff to repair amounting to a constructive eviction is a question of fact for the jury under all the evidence and proper instructions of the court as to the law. Rubens v. Hill, 213 Ill. 523.

The court instructed the jury that under the circumstances the defendant moving from the premises July 10th and the rent for July becoming due and payable prior thereto, the defendant was liable for $125.00, the rent for the month of July. This was error. If there was an eviction, the defendant was discharged from the payment of rent for the premises subsequent to the eviction. Leadbeater v. Roth, 25 Ill. 587; Wright v. Lattin, 38 Ill. 293.

The defendant after leaving the premises delivered the key to the plaintiff's agent. The court instructed the jury: "The question as to the key cuts no figure in this case as I see it." It seems that there can be no constructive eviction without a surrender of the possession of the premises. Burnham v. Martin, 90

Ill. 438; Keating v. Springer, 146 Ill. 496. The delivery of the key to the plaintiff was a circumstance tending to prove the surrender of the possession of the premises. It is evident that the court's remarks, rulings on the evidence and instructions to the jury practically eliminated the defense of eviction.

There were other errors, but as there appears no reason why they should again occur on another trial of the case, it is unnecessary to discuss them.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*