## George Hartenbauer, Appellee, v. Kathryn Brumbaugh, Appellant.

### Gen. No. 25,610.

1. LANDLORD AND TENANT, § 267*—*what amounts to constructive eviction*. Evidence establishing that a landlord knew of the existence of a house of ill fame conducted on the third floor of a building, and that such disorderly house was permitted to continue in spite of such knowledge by the landlord, amounts to a constructive eviction as to another tenant in the same building occupying a different apartment.

2. LANDLORD AND TENANT, § 267*—*when landlord is liable for nuisance*. If a tenant conducts leased premises as a house of ill fame, irrespective of his or her intentions when the lease was entered into, and the situation is brought to the attention of the landlord, who fails to avail himself of the remedy which the law affords him to stop such use of the premises, and permits the condition to continue, the maintenance of such public nuisance becomes the act of the landlord (Abatement and Injunction Act of 1915, Callaghan's 1916 Stat. ¶ 3591[2]), and the act may be availed of by any law-abiding tenant of the landlord as a constructive eviction.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. LANDLORD AND TENANT, § 267*—*what constitutes constructive eviction of tenant.* Constructive eviction exists where the premises leased are rendered useless to the tenant, or the tenant is deprived, in whole or in part, of the possession or enjoyment of them, as a result of the wilful, wrongful act of the landlord, which act may be the wilful omission of a duty on the landlord's part, or the commission of a wrongful act by him of a grave and permanent character.

4. LANDLORD AND TENANT, § 267*—*when tenant does not waive right to vacate for act of landlord.* A tenant does not waive the right to vacate because of the existence of lewd conditions, by continuing to occupy the premises for a few months to give the landlord opportunity to remedy the conditions, especially where the evidence showed that about the time of the discovery of the conditions the tenant suffered a broken leg confining her to bed as long as she occupied the premises.

Appeal from the Municipal Court of Chicago; the Hon. JOHN A. SWANSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and remanded. Opinion filed December 22, 1920.

SONNENSCHEIN, BERKSON, LAUTMAN & LEVINSON, for appellant.

W. SCOTT HODGES and CHARLES L. MAKEMSON, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

The plaintiff, George Hartenbauer, was the owner of an apartment building and the defendant, Mrs. Brumbaugh, was one of his tenants. She had a written lease on the first floor apartment for a period of 2 years from November 1, 1917. The plaintiff brought this suit against her to recover the rent stipulated in her lease, for the months of May to September, 1918, inclusive. The defendant admitted the execution of the lease and that she went into possession in November, 1917, and vacated in May, 1918, but she

claimed a constructive eviction, in that the third apart-
ment in the building in question was conducted by the
tenant of that apartment as a house of ill fame, with
the plaintiff's knowledge, whereby he was responsible
for creating or conducting a public nuisance; and
further, that the common stairways, corridors, hall-
ways and approaches to the apartments in said build-
ings, which were under the sole control of the plaintiff,
were, to his knowledge, used in such a manner as to
disturb the peace, quiet and enjoyment of the apart-
ment occupied by the defendant. At the close of all
the evidence the court directed the jury to find the
issues for the plaintiff and assessed his damages at
the full amount claimed, which was $332.50. Judg-
ment followed for that amount, from which the de-
fendant has perfected this appeal.

There were two apartments on the third floor which
were leased by a woman tenant. We are unable to tell
from the record whether the trial court based his
peremptory instruction for the plaintiff on his view
of the facts or the law or both. The plaintiff con-
tends that the defendant's evidence failed to establish
that the third floor tenant was conducting her prem-
ises (either one apartment or both) as a house of ill
fame. If that view of the evidence was the basis of
the court's finding, we are of the opinion that such
finding was against the manifest weight of the
evidence. It would serve no purpose to recite the evi-
dence in detail in this opinion. It is sufficient to say
that we have examined all the evidence with care and
that, in our opinion, it establishes the conditions the
defendant set forth in her affidavit of merits, both as
to the third floor apartment and as to the conditions
which existed in the hallways of the building, and
that the evidence shows that the third floor tenant
was conducting her premises as a house of ill fame,
and, in our opinion, the evidence further established
the fact that the plaintiff knew of this and by reason

of his failure to take appropriate action, he permitted that public nuisance to be maintained, as alleged by the defendant.  In *Allott v. Bowers*, 168 Ill. App. 573, this court held that if a landlord permitted the apartment which he himself occupied to be used and frequented by drunken persons and to be used as a house of ill fame, his tenant occupying another apartment in the building would thereby have sufficient grounds for vacating such apartment without incurring any liability for rent for the period subsequent to the removal, upon the principle that if the landlord creates a nuisance, whether upon or near the premises, it' will amount to an eviction, citing Wood, Landlord and Tenant, pp. 803.  We now hold that the tenant has the same right if the landlord permits such a nuisance to be maintained by another tenant, in premises leased from such landlord by the latter.  In contending the contrary, the plaintiff relies upon *Cougle v. Densmore*, 57 Ill. App. 591, where it was held that before a tenant can impute lewdness of cotenants to the landlord, as an excuse for not paying rent, he must show enough to charge the landlord with knowledge that such cotenants took their lease with lewd intentions.  That does not express the present law on that subject.  The Abatement and Injunction Act passed by our legislature in 1915 [Callaghan's 1916 Stat. ¶ 3591(2)] provides: "That all buildings and apartments, and all places, and the fixtures and movable contents thereof, used for purposes of lewdness, assignation or prostitution, are hereby declared to be public nuisances, and may be abated, as hereinafter provided.  The owners, agents, and occupants of any such building or apartment, or of any such place shall be guilty of maintaining a public nuisance, and may be enjoined as hereinafter provided."  If a tenant, irrespective of his or her intentions when the lease is entered into, conducts the leased premises as a house of ill fame and this is brought to the attention of the

landlord and the latter fails to avail himself of the remedy which the law affords him to stop such use of his premises and get rid of the tenant in question, but, on the contrary, does nothing and permits the conditions to continue, the law makes the maintenance of such public nuisance the act of the landlord. Such an act may be availed of by any law-abiding tenant of the landlord as a constructive eviction. In several jurisdictions it has been so held, even apart from such a statute as we have in Illinois. *Paterson v. Bridges,* 16 Ala. App. 54, 75 So. 260; *Weiler v. Pancoast,* 71 N. J. Law 414; *Phyfe v. Dale,* 72 N. Y. Misc. 383, 130 N. Y. Supp. 231; *J. W. Cushman & Co. v. Thompson,* 58 N. Y. Misc. 539, 109 N. Y. Supp. 757.

There will be a constructive eviction where the premises leased are rendered useless to the tenant or the tenant is deprived, in whole or in part, of the possession or enjoyment of them, as a result of the wilful, wrongful act of the landlord, which act may be the wilful omission of a duty on his part or the commission of a wrongful act by him. To be the basis of an eviction, the omission of a duty on the part of the landlord or the wrongful act committed by him must be something of a grave and permanent character evidencing the intention on his part that the tenant shall be deprived of the enjoyment of the demised premises. It has been held that under a lease requiring the landlord to make repairs, there will be a constructive eviction if the tenant's premises become filled with sewer gas, causing distress and illness to the tenant's family, and such condition is permitted to remain, by the landlord, for want of proper repairs. *Sloss v. Brockman,* 171 Ill. App. 465. We think the presence of the habitues and frequenters of a house of ill fame, about the premises, can be considered no less the basis of a constructive eviction than sewer gas.

In the case of *Cougle v. Densmore, supra,* the court

seems to have based its decision, at least in part, on the ground that the complaining tenant had the same access to the law as did the landlord by reason of the maintenance of the nuisance complained of. Such may not be said of our present laws, for while, in case of the maintenance of a house of ill fame in premises leased by a tenant, our Abatement and Injunction Act affords relief to any citizen, including the complaining tenant or the landlord, the remedy which is afforded the landlord is much the more direct and effective.

The evidence shows that the conditions surrounding the third floor apartment became known to the plaintiff in the case at bar at least as early as January 1, 1918, and that notwithstanding repeated complaints on the part of the defendant, to the landlord and his agents, the conditions had not been changed when the defendant vacated the premises. It is contended by the plaintiff that inasmuch as the defendant continued to occupy the premises during the period to which we have just referred, notwithstanding the existing conditions, she waived any right she may have had to vacate the premises by reason of these conditions. The contention is entirely without merit. In the first place, the tenant would waive no rights by waiting the period of a few months to give the landlord an opportunity to remedy the conditions and, in the next place, the evidence in the case at bar shows that early in January the defendant suffered a broken leg which kept her confined to her bed for several months and on crutches as long as she occupied these premises.

The record shows, as the plaintiff points out, that the defendant herself testified that when she talked with the plaintiff's agent on the third of January about these conditions, that being occasioned by a raid that had been made by the police on the apartment in question, the agent told the defendant that they would do their best to get rid of the undesirables.

It also shows that the "undesirables" were not put out of the building and in the last conversation the defendant had with the plaintiff's agent he called her attention to the fact that the undesirable tenant in question had two apartments in the building and he intimated that if she were put out there would be two apartments vacant. That may have had something to do with the inaction of the plaintiff, but, whatever the reason, we are of the opinion, as above stated, first, that the evidence established the fact that a house of ill fame was conducted on the third floor of this building and that this was known to the landlord and notwithstanding such knowledge he permitted it to continue, and second, that this condition of affairs amounted to a constructive eviction.

It follows that the trial court erred in allowing the plaintiff's motion for a peremptory instruction directing the jury to find the issues in his favor. It will, therefore, be necessary to reverse the judgment of the trial court. If, in the absence of further evidence, the defendant had presented a motion for a peremptory instruction, we are of the opinion that to have refused it would have been error. If the court had overruled plaintiff's motion for a directed verdict, it may be he would have had evidence to offer in rebuttal. For that reason only we cannot reverse this judgment with a finding of fact.

The cause will, therefore, be remanded to the municipal court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

TAYLOR, P. J., and O'CONNOR, J., concur.