## Jacob L. Kesner, Appellee, v. Consumers Company, Appellant.

### Gen. No. 29,919.

1. MUNICIPAL CORPORATIONS—*effect of ordinance within municipal limits.* A valid city ordinance has the force and effect of a statute within the corporate limits of the city, and any act done in violation of such ordinance is therefore unlawful.

2. LANDLORD AND TENANT—*duty to protect tenant against violations of ordinances creating fire hazard.* Where a city ordinance imposed restrictions upon the keeping of moving picture films in buildings within the city, requiring compliance therewith by both owners and tenants of such buildings, and violations of such ordinance constituted a source of danger to the occupancy of other tenants of the building, it was the duty of the owner, both under the ordinance and under his implied covenant for quiet enjoyment, to use all reasonable means to protect such other tenants against such other violations.

3. LANDLORD AND TENANT—*failure of landlord to compel observance by other tenants of ordinance as maintenance of nuisance.* The failure of a landlord, after notice of the nonobservance by his tenant, a film exchange, of ordinances restricting the keeping of moving picture films on the premises, to compel observance thereof, where such violations constituted a source of danger to other tenants of the building, constituted the maintenance of a nuisance upon the premises occupied by such film exchange.

4. LANDLORD AND TENANT—*propriety of instruction as to duty of landlord to require other tenants to comply with ordinances regulating conduct of such tenant's business.* Where there was evidence in an action for rent defended by a claim of constructive eviction, tending to show notice to the landlord of violations by another tenant, a film exchange, of ordinances regulating the keeping of moving picture films in the building, such violations constituting a source of danger to the continued occupancy of the defendant, and such ordinance exacting compliance on the part of both owner and tenant, it was error to charge that plaintiff owed no duty to defendant to see that the film exchange in his building was "maintained and operated in a careful manner or in compliance with the ordinances of the City of Chicago."

5. LANDLORD AND TENANT—*propriety of instruction respecting participation by landlord in violations by other tenants of ordinance regulating tenants' business.* An instruction, in an action for

Kesner v. Consumers Co., 239 Ill. App. 92.

rent defended by a claim of constructive eviction, that defendant's vacation of the premises was not justified and that the jury should find for the plaintiff unless they believed not only that the manner in which another tenant, a film exchange, conducted its business, amounted to conduct of such a grave and permanent character as to deprive defendant of the use and enjoyment of the premises, but also "that plaintiff actively participated in conducting said exchanges in said manner," held prejudicially erroneous because misleading in that it might well have given the jury to understand that it was incumbent upon defendant to prove that plaintiff actively took part in conducting the exchange in an unlawful manner, whereas it would be sufficient for defendant to prove that plaintiff knowingly permitted the alleged dangerous condition to continue in his building without taking steps to remove the danger therefrom, as required by ordinance and his implied covenant to defendant for quiet enjoyment.

6. Landlord and tenant—*propriety of refusing requested instruction touching essentials to proof of constructive eviction.* A requested instruction, in an action for rent defended by a claim of constructive eviction, stating in substance that while the jury had been instructed that eviction is "the result of an intended willful, wrongful act on the part of the landlord," still the intention of the landlord to evict "may be inferred from the character of the act or acts done by the landlord," if the jury find from the evidence "that the necessary result thereof is to deprive the tenant of the beneficial, quiet or peaceable enjoyment of the demised premises," held to state a correct rule of law and to have been improperly refused.

7. Appeal and error—*invited erroneous definition.* An appellant is not in a position to complain of instructions giving definition of a term, where it has used substantially the same definition in its own instructions.

8. Landlord and tenant—*propriety of instruction defining "eviction" in action involving only issue as to constructive eviction.* Instructions giving a general definition of the term "eviction" have only an indirect, if any, application to an action for rent wherein under the evidence there is presented merely an issue as to constructive eviction.

9. Landlord and tenant—*admissibility of evidence as to causes of fires in another city, in action for rent defended by claim of constructive eviction by maintenance of fire hazard.* Tables purporting to be from annual reports of the fire department of New York City and to show the causes of fires in that city during a given period, held not properly admitted in evidence in an action for rent wherein it was claimed that defendant was constructively evicted from the demised premises by the failure of the plaintiff to compel other tenants of the building, operating film exchanges,

to comply with the provisions of ordinances regulating the keeping of motion picture films in buildings, neither the reports nor the tabulations therefrom proving or tending to prove any fact material to the issues in the case.

10. EVIDENCE—*admissibility of evidence as to other buildings permitting occupancy by business creating fire hazard made basis of claim of constructive eviction in defending action for rent.* It was error, in an action for rent wherein the defendant claimed that it was constructively evicted from the demised premises by the failure of the* plaintiff to compel other tenants of the building, operating film exchanges, to comply with ordinances regulating the keeping of moving picture films therein, to permit a witness for plaintiff to testify concerning a list he had prepared showing other buildings in the city which had leased space to film exchanges, such evidence being immaterial to any issue in the case.

11. EVIDENCE—*opinion evidence as to dangers from presence of fire hazard in building as invading province of jury in action for rent defended on ground of constructive eviction.* It was error, in an action for rent wherein defendant claimed constructive eviction by the failure of the landlord to compel other tenants of the building, operating film exchanges, to comply with ordinance regulations governing the keeping of moving picture films therein, to permit plaintiff to ask others of his tenants whether they considered the presence of the film exchanges in the building to be dangerous, the question of danger from the presence and operation of the film exchanges being one for the jury, nor was the admission of such evidence justified by the fact that defendant was permitted to ask like questions of expert witnesses, where plaintiff's witnesses in rebuttal were not qualified as experts on the subject of the question.

12. LANDLORD AND TENANT—*question for jury in action for rent defended by claim of constructive eviction by maintaining fire hazard in violation of statute.* In an action for rent wherein the defendant claimed constructive eviction by the failure of the plaintiff to compel other tenants of the building, operating film exchanges, to comply with ordinances regulating the keeping of moving picture films in the building, the question for the jury was not whether "all reasonable men under substantially similar circumstances" as those of the plaintiff and the defendant would have regarded the danger, if any, created by the presence of the film exchanges in the building, as so great that the fear or apprehension of it would have disturbed the plaintiff's occupancy of the premises to such an extent as to deprive it of the use and enjoyment thereof, but was whether the jury believed, from the evidence, that the maintenance and operation of the film exchanges was such a source of danger to the lives of the defendant's employees and its property as to seriously interfere

with the beneficial use and enjoyment by defendant of the leased premises.

Appeal by defendant from the Superior Court of Cook county; the Hon. M. L. McKinley, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1925. Reversed and remanded. Opinion filed December 8, 1925. Rehearing denied December 21, 1925.

Winston, Strawn & Shaw, for appellant; Edward W. Everett, Harold Beacon and George T. Evans, of counsel.

Mayer, Meyer, Austrian & Platt, for appellee.

Mr. Justice Fitch delivered the opinion of the court.

This is an appeal from a judgment for $73,962.34 in plaintiff's favor, mainly for rent of the twentieth and twenty-first floors of an office building at the corner of State and Quincy streets, Chicago. The defense was constructive eviction, arising out of the acts of the plaintiff in leasing other portions of the same building, underneath the floors occupied by defendant, to be occupied by motion picture film exchanges, with knowledge that such occupancy involved the use and storage of large quantities of explosive and inflammable material, attended with danger to defendant's officers and employees, and in permitting such occupancy to continue against the protests of the defendant after a destructive fire in one of such exchanges had demonstrated, as is claimed, the dangerous character of such occupancy in an office building occupied by many different tenants. There was a jury trial and the record is voluminous. Exhaustive briefs have been filed, and we have also had the benefit of oral arguments by counsel. Having come to the conclusion, after due consideration, that the judgment must be reversed and the cause remanded, because of prejudicial errors at the trial, we shall refrain from stating more of the facts

than may be necessary to give the reasons for our conclusion.

The lease of the two floors mentioned is from plaintiff to defendant, was executed in 1913 and covers a period of twenty years. By it the twentieth and twenty-first floors of the building mentioned are demised to defendant to be occupied for office purposes of the business of the lessee. When the lease was made, the building was under construction, and the lease provides that the building shall be called the "Consumers Company Building." Defendant took possession about May 1, 1913, and remained in possession continuously until July 26, 1917, and paid all rent accruing under the lease up to August 1, 1917. Defendant also had other leases for several single rooms, for shorter periods.

Subsequent to the making of defendant's main lease, leases of other parts of the building were made by plaintiff to corporations who operated what are known as "film exchanges." It appears from the evidence that the business of conducting a film exchange involves receiving, storing, delivering and distributing motion picture films, paper posters and other advertising matter, to theaters where motion pictures are to be exhibited; that a reel of film is 1,000 feet long and weighs five pounds; that these reels are not sold, but are rented, exhibited and returned, resulting in the films being constantly handled and stored in the exchanges; that on July 1, 1917, there were eight of these exchanges in the building and that at times as much as twenty tons of film were thus used and stored in the rooms occupied by them.

Ordinances of the City of Chicago were introduced in evidence, which forbid any person, firm or corporation from keeping or storing more than 3,000 feet of motion picture films in any building until a license therefor shall have been obtained upon application to the Chief of Fire Prevention and Public Safety. The

ordinances provide that when such an application is made, an investigation shall be made by the chief for the purpose of ascertaining whether or not the building in which it is desired to store or use such films "is so situated that the storage or using of motion picture films therein would not be so dangerous as to constitute a nuisance, or to be a menace to the safety of the public or to the adjoining property, and also whether the conditions under which such motion picture films are to be kept or used are such as to provide the maximum safety." The ordinances also describe in detail the manner in which such films shall be kept, used and stored. They provide for the construction of vented vaults in which the films are to be stored, prescribe the manner in which the films shall be handled and inspected, make it the duty of the Chief of Fire Prevention and Public Safety to cause all such premises to be inspected at least once in two months, forbid smoking on the premises, etc. By these ordinances, the duty to comply therewith is imposed upon the owner of the building as well as upon the tenants.

On July 1, 1917, about three o'clock in the morning, a fire started in the rooms of one of the film exchanges on the fourth floor. While the origin of the fire was never ascertained, the evidence tends to prove that during its progress explosions occurred which blew out the doors and walls of the vaults where the films were stored; that the heat was intense; that flames shot out through the vents and windows and across a twelve-foot alley to an adjoining building; that the firemen were unable to use a cast-iron standpipe on the outside of the building because the fire had melted and warped it; that the fire escape was heated to a white heat, twisted out of shape and rendered useless, and that dangerous gases were generated.

Immediately after the fire, Mr. Fred Upham, president of the defendant company, told plaintiff that he had been informed by the Chief of the Fire Preven-

tion Bureau, and that it was "plain to see," that "if the fire had occurred while our people were occupying the floors which we rented, it would not have been possible to get out," that he "did not propose to jeopardize the lives of our people" by "staying over what I considered a fire trap," and that if the film companies were left in the building, defendant "would get out very promptly." To this, plaintiff replied: "I am surprised, Fred, that you are such an old woman —to get scared at a little fire like that." A few days later, Mr. Upham told plaintiff that if he would arrange the film exchanges in the building so that defendant could have suitable space beneath instead of above them, defendant would remain, "because that would obviate the danger to our employees," and plaintiff submitted a proposition on that basis, which was declined by defendant because the space offered was not suitable. On July 21, 1917, defendant served a written notice upon plaintiff canceling its leases because plaintiff permitted other tenants to conduct therein "a business which renders the building dangerous to the property" of defendant "and to the lives of its employees," and failed to remove the danger after being notified and requested so to do; and on July 27, 1917, defendant moved its property and business to another building.

Judgments by confession were entered in seventeen cases and a distress proceeding was instituted by the plaintiff. Defendant at once made motions to vacate the judgments and for leave to plead, which motions were granted in several cases, and pleas to the merits were filed in such cases. Then it was stipulated that all the suits be consolidated, that all claims of the plaintiff be presented and heard under the common counts in assumpsit, and all claims of the defendant, including its claim of set-off for alleged breach of the lessor's covenant for quiet enjoyment, should be presented and heard under the plea of general issue.

The twelfth instruction given to the jury on behalf of the plaintiff told the jury that plaintiff "owed no duty" to defendant to see that the film exchanges in his building "were maintained and operated in a careful manner or in compliance with the ordinances of the City of Chicago." This was error. One section of an ordinance offered in evidence provides that "any building * * * or premises perilous to life or property by reason of the nature, condition or quantity of its contents or its use * * * or by reason of defects in its construction * * * or deficiencies in such * * * fire prevention equipment as may be required by the provisions of this chapter, is hereby declared to be a nuisance." There was evidence tending to prove that the premises occupied by some, if not all, of the film exchanges came within this definition of a nuisance. A valid city ordinance has the force and effect of a statute within the corporate limits of the city, and any act done in violation of such an ordinance is therefore unlawful. There was evidence tending to prove many violations of the ordinance by the film exchanges and that the plaintiff was notified of such violations both before and after the fire occurred. The ordinance imposed upon the plaintiff, as well as upon the film exchanges, the duty of compliance therewith, and if, as the evidence tends to prove, such violations constituted a serious hazard and source of danger to the continued occupancy by the defendant of the premises leased to it, it was plaintiff's duty, both under the ordinance and under his implied covenant for quiet enjoyment, to use all reasonable means to protect the defendant against such violations. Plaintiff had the right and power under his leases to the film exchanges to compel observance by them of all city ordinances, and his failure to do so, after notice, if he did so fail, amounted, in effect, to maintaining a nuisance in the premises occupied by the exchanges.

The same instruction also told the jury that if de-

fendant vacated the leased premises merely because of the manner in which the film exchanges were operated, such vacation "was not justified," and the jury should find for the plaintiff, unless it believed from the evidence not only that the manner of conducting the film exchanges "amounted to conduct of such a grave and permanent character as to deprive defendant of the use and enjoyment of said premises," but also *"that plaintiff actively participated in conducting said exchanges in said manner."* The jury might well have understood this to mean that to justify defendant in vacating the premises it must prove that plaintiff actively took part in conducting the exchanges in an unlawful manner. Even to a lawyer, a failure or refusal to act is not the same thing as "active participation," although that seems to be the sense in which the latter phrase is used in the instruction. To a jury, who are not lawyers, the instruction in this respect was manifestly misleading, and in our opinion was prejudicial error.

The first and third instructions contain the same error, in requiring defendant to prove active participation by the plaintiff in the operation of the film exchanges, in addition to proof that defendant "consented to *and* connived in" the manner in which the exchanges were operated. Upon that question, it was enough to prove that plaintiff knowingly permitted the alleged dangerous conditions to continue in his building without taking such steps as were required of him by the city ordinance and by his implied covenant for quiet enjoyment, to remove the danger therefrom. The instructions should not have been given without modification in this respect.

The court refused instruction number fifty-seven, offered by defendant, stating in substance that while the jury had been instructed that eviction is "the result of an intended willful, wrongful act on the part of the landlord," still the intention of the landlord to

evict "may be inferred from the character of the act or acts done by the landlord," if the jury find from the evidence, "that the necessary result thereof is to deprive the tenant of the beneficial, quiet or peaceable enjoyment of the demised premises." This instruction states a correct principle of the law which was applicable to the facts proved and should have been given. The forty-eighth given instruction does not cover the same ground, as is claimed by plaintiff's counsel.

As to the errors alleged in other instructions, which purport to give definitions of the term "eviction," we think defendant is not in a position to complain of such errors, for the reason that it used substantially the same definitions in its own instructions. There is, however, a clear distinction between cases of actual eviction and those where only a constructive eviction is claimed, as in this case, and general definitions which apply only to cases of actual expulsion of a tenant or physical interference by the landlord with a tenant's possession, have only an indirect application, if any, to the facts of this case. Without discussing in detail the nature and the reasons for this distinction, it will be enough, we think, to call attention to the following cases, which illustrate the distinction and apply it to acts of a character and effect similar to those shown by the evidence in this case: *Halligan v. Wade,* 21 Ill. 470; *Wright v. Lattin,* 38 Ill. 293; *Lancashire v. Garford Mfg. Co.,* 199 Mo. App. 418, 203 S. W. 668; *Wade v. Herndl,* 127 Wis. 544; *Donovan v. Koehler,* 119 App. Div. 51, 103 N. Y. Supp. 935; *Duff v. Hart,* 16 N. Y. Supp. 163; *Weiler v. Pancoast,* 71 N. J. L. 414; *Blaustein v. Pincus,* 47 Mont. 202, 211; *Hartenbauer v. Brumbaugh,* 220 Ill. App. 326; *Allott v. Bowers,* 168 Ill. App. 573. The recent case of *Gibbons v. Hoefeld,* 299 Ill. 455, 464, also points out a further distinction as to affirmative proof of intent in cases where the alleged eviction consists of an omission of duty by the landlord

which has the effect of depriving the tenant of the beneficial use and enjoyment of the demised premises.

Upon the trial, plaintiff called John F. Ancona as an expert witness. He took with him to the witness stand two tabulations made by him from published documents, purporting to be annual reports of the fire department of New York City to the mayor of that city, and purporting to show the causes of fires in New York, and the losses in money therefrom during the years 1912 to 1917. The publications from which the witness made these tabulations were not properly identified, and would not have been admissible even if they had been duly authenticated. The witness testified that all he knew of the published documents from which he made his tables was that "certain publications were made which purport to be made by the New York fire department, and I know nothing of the correctness of them," nor "whether they were published by the authority of the City of New York," nor "how the original reports were made up." One of these tables, purporting to show the causes of fires in greater New York during the years 1916 and 1917, in which there was a loss of life, purports to show that none of such fires was caused by film, although, as we understand it, that is merely the conclusion of the witness from the fact that film is not mentioned in the report as one of such causes. The other table purports to show that out of a total of over 84,000 fires in that city in six years, only 145 were due to films, while over 3,000 were due to benzine and gasoline, and nearly 70,000 from "other causes," not enumerated. These tables were admitted in evidence over the objection of defendant's counsel, and, over a like objection, were permitted to be taken by the jury to the jury room. Neither the published reports nor the tabulations therefrom prove or tend to prove any fact material to the issues in this case. It was error to admit them.

We think it was also error to permit the plaintiff's

witness Siebert to testify concerning a list he had prepared of other buildings in Chicago which leased space to film exchanges. This testimony was objected to and the objection should have been sustained. Whether the owners of other buildings permitted film exchanges in their buildings was immaterial to any issue in this case.

It was also error to permit plaintiff, in rebuttal, to ask a number of his tenants, in effect, whether they considered the presence of the film exchanges in his building to be dangerous. The question of danger from the presence and operation of the film exchanges was a question for the jury to determine, and it was not proper to ask the opinions of witnesses upon that subject. Plaintiff's counsel attempt to justify their introduction of this evidence by saying that defendant opened the door to it by placing expert witnesses on the stand and asking them similar questions. We are inclined to hold that the questions propounded by plaintiff's counsel were improper even if asked of expert witnesses, because they invaded the province of the jury. But the witnesses produced by plaintiff in rebuttal were not qualified to speak upon the subject, even if the question had been otherwise proper. The question before the jury was not whether "all reasonable men under substantially similar circumstances and conditions as those of the plaintiff Kesner and the defendant Consumers Company would have regarded such danger, if any, as so great that the fear or apprehension of it would have interfered with or disturbed said company's occupancy of the premises in question to such an extent as to deprive it of the use and enjoyment thereof" (as was erroneously stated in the first given instruction) but was, whether the jury believed, from the evidence, that the maintenance and operation of the film exchanges was such a source of danger to the lives of defendant's employees and its

property as to seriously interfere with the beneficial use and enjoyment by defendant of the leased premises.

For the reasons stated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

BARNES, P. J., and GRIDLEY, J., concur.