WILLIAM A. DUGUID COMPANY, Plaintiff-Appellant, *v.* HUNDMAN
RENTAL PROPERTIES, Defendant-Appellee.

Fourth District   No. 17586

Opinion filed June 10, 1982.

Luedtke, Hartweg & Turner, of Bloomington (Darrell L. Hartweg, of
counsel), for appellant.

Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman, of Blooming-
ton (Mark T. Dunn and William T. Hundman, of counsel), for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff, as lessee of certain property in Normal, Illinois, brought suit
against defendant, as lessor, for damages for breach of the covenant of
quiet enjoyment. The circuit court of McLean County entered summary
judgment for defendant and this appeal followed.

From the pleadings and the documents supporting the motion for
summary judgment, the facts are ascertained to be as follows. Plaintiff
obtained a subcontract from Hundman Commercial Construction Co.,
Inc. (apparently a company related to defendant), to fabricate and erect
exterior wall panels for a building then under construction by Hundman
Construction. Because of the nature of the panels, it was necessary that
they be constructed in a controlled environment in order to protect them
from moisture, excessive heat or cold, and exposure to excessive sunlight.
In order to obtain such an environment, plaintiff and defendant entered
into a lease of certain premises in Normal. The term of the lease was 30
days commencing June 1, 1977. There was some evidence that Harold
Duguid, a vice-president of plaintiff who executed the lease on its behalf,
told officers of defendant that plaintiff would need to occupy the prem-
ises for 12 to 14 weeks. However, this is not spelled out in the lease. The
rent reserved was $500.

Although the lease expired by its own terms on July 1, 1977, on that
date plaintiff paid to defendant another $500 representing rent for the
month of July. On July 8, 1977, an officer of defendant was verbally

notified by an official of Normal that the building occupied by plaintiff was not approved for such occupancy. A letter from the Normal building commissioner followed on July 11 stating that the premises had been posted "Not Approved for Occupancy" on July 7 and could not be used for any purpose until the requirements of the Normal Municipal Code were fulfilled. Plaintiff was notified of these developments; prior to this time plaintiff had no knowledge of any building violations.

On July 15, 1977, Harold Duguid, plaintiff's vice-president, was verbally notified by the fire marshal of Normal to vacate the building and on the same day an official of Normal put a red tag on it. The tag signified that the building was unsuitable for occupancy.

Following the receipt of the notice of disapproval, an officer of defendant entered into negotiations with officials of Normal in an effort to obtain more time to vacate. These were successful and the vacation date was moved back to August 15, 1977. Plaintiff received a copy of the letter of extension. The extension was afterwards moved further back to August 20.

Notwithstanding these developments, plaintiff tendered another $500 as rent for August. Harold Duguid testified that he knew at that time that the vacation date had been extended to and fixed at August 15, but that he hoped for a further extension.

Plaintiff finally vacated the premises on August 19, 1977. A tent was erected outside the building, and efforts were made to continue construction of the panels in it, but it proved to be too small and officials of Normal informed plaintiff that the panels could not be constructed at an outside site. The whole operation was then moved to the construction site of the building for which the panels were intended. Defendant never made any effort to remedy the violations in the leased premises.

In its complaint plaintiff alleged that the covenant of quiet enjoyment had been breached and that it had suffered damage in the expense of moving equipment and materials; damage to the panels themselves because of exposure to the weather; and damage in being unable to fulfill its contract with the construction company within the allotted time.

The parties have cited a number of cases but none of them deals directly with the precise issue presented here: whether a tenant, holding over under a lease and knowing that he may be required to vacate as a result of building code violations, may claim damages for a breach of the covenant of quiet enjoyment. We hold that he may not and affirm the trial court.

Three older cases lay down rules which are dispositive. In *Thomas v. Wiggers* (1866), 41 Ill. 470, the supreme court held that courts are to consider the situation of the parties and the circumstances existing at the time of the execution of a lease in ascertaining the intent of the parties. In

that case the tenant had been occupying a room under oral and written leases from the landlord for months prior to the execution of a five-year lease. The landlord occupied the adjacent room under which there was a steam engine. Prior to the execution of the lease and during his prior tenancy, the tenant had the use of the exhaust steam from the engine which he used in his business. This use was not mentioned in the lease. After about one year into the new term the landlord cut off the exhaust steam and the tenant sued for damages. The trial court would not allow the tenant to show his prior uninterrupted use of the steam and the supreme court held this to be error. One of the bases for the new lease was the use of the steam.

*Wiggers* was followed in *Chicago Warehouse & Manufacturing Co. v. Illinois Pneumatic Tool Co.* (1889), 35 Ill. App. 144. The circumstances were similar. The tenant leased a portion of the premises under which was located a steam boiler which supplied power to the entire building. A new lease was executed between the parties. Several months later the tenant vacated the premises because the heat from the boiler became too oppressive. He then brought suit for breach of the covenant of quiet enjoyment. The appellate court held that he could not recover and that there was no breach of the covenant because the tenant knew of the location of the boiler by virtue of the prior tenancy and was bound to take notice of the heat.

The rule of pre-existing condition of which the tenant has knowledge was applied in *Kiernan v. Bush Temple of Music Co.* (1907), 229 Ill. 494, 82 N.E. 410. The tenant leased the premises in 1902 and renewed in 1903. The lease obligated the landlord to furnish an amusement license for the tenant. It was afterwards discovered that the building was in violation of ordinances of the city of Chicago relating to theaters and places of amusement. As a result, the premises were closed in order to allow the landlord sufficient time to make the necessary repairs and alterations to bring them into compliance with the ordinances. The tenant attempted to set off from his rent the damages which he claimed to have sustained as a result of the closing. The supreme court agreed with the appellate court that he could not, holding that both the landlord and the tenant must be presumed to have had knowledge of the ordinances when the lease was executed and that the interference of the city did not constitute a breach of the covenant of quiet enjoyment. The supreme court, quoting the appellate court, said: " 'No covenant on the part of the lessor can be implied that the lessee should be permitted to use the demised premises in violation of the building ordinance.' " 229 Ill. 494, 506, 82 N.E. 410, 414.

In the case at bar plaintiff alleged no damages for the month of June 1977 but only for July and August 1977. However, notwithstanding the knowledge of the building code violations which is imputed to it under the authorities just cited, plaintiff had actual knowledge of them from and

after early July, and notwithstanding paid rent for the month of August and proposed to continue illegal operations. It is thus unlike *Kesner v. Consumers Co.* (1925), 239 Ill. App. 92, cited by plaintiff. In that case the landlord allowed another tenant in the same building to store large quantities of flammable film in violation of a city ordinance. A fire occurred and made the tenant's rooms unusable, so it vacated the premises. The landlord sued for rent, and the tenant claimed set-off for breach of quiet enjoyment. A verdict for the landlord was reversed. While much of the opinion is taken up with discussion of errors in jury instructions, an essential holding of the court was that it was the duty of the landlord under the covenant of quiet enjoyment to use all reasonable means to protect the tenant against ordinance violations.

*Kesner*, then, involved an innocent tenant, so the rule of *Kiernan* is inapplicable. In the instant case, the tenant has in effect alleged that the landlord covenanted to permit him to use the premises in violation of the ordinance, and *Kiernan* is fully applicable.

Likewise, we find *Eskin v. Freedman* (1964), 53 Ill. App. 2d 144, 203 N.E.2d 24, also cited by plaintiff, inapposite. That case is essentially one of pleading. The court cited *Kiernan* concerning equal knowledge of municipal ordinances as between landlord and tenant and then stated without citation of authority that the rule did not apply to knowledge of ordinance violations. However, the opinion goes on to say that if such violations had been alleged, the counterclaim probably would have been good and the failure to make such allegations was fatal. We read a strong implication in this language to the effect that *Kiernan* would have applied if it had been properly alleged. Since plaintiff in the instant case had actual knowledge of the violations, *Eskin* cannot apply.

The parties also argue as to whether covenants in an original lease are applicable to a holdover tenancy. In the case at bar the argument is beside the point. When both parties are charged with knowledge of ordinances and both are in possession of actual knowledge of violations, there is no breach of the covenant of quiet enjoyment. (*Kiernan; Eskin.*) We also fail to see the pertinence of certain cases cited from other jurisdictions. We have discussed solid authority from our own State and thus no need exists to go beyond the jurisdiction. *Wiggers, Chicago Warehouse,* and *Kiernan* have stood the test of time, and to paraphrase Shakespeare, age cannot wither nor custom stale their valid principles: no covenant in a lease can permit a tenant to make an illegal use of the demised premises.

The circuit court of McLean County was correct in entering summary judgment for the defendant, and its action in so doing is affirmed.

Affirmed.

MILLS and LONDRIGAN, JJ., concur.