No. 38,716

E. W. Mabery, *Appellant*, v. The Western Casualty and Surety Company and Edward Clifford Gordon, *Appellees.*

(250 P. 2d 824)

Opinion filed December 6, 1952.

*Ora D. McClellan* and *Gerald L. Michaud,* both of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Keith Sanborn* and *Russell Cranmer,* all of Wichita, were with them on the briefs for the appellant.

*Douglas Hudson* and *Douglas G. Hudson,* both of Fort Scott, argued the cause, and *Howard Hudson* and *P. S. Frick,* both of Fort Scott, were with them on the briefs for the appellees.

The opinion of the court was delivered by

Price, J.: This was an action for damages, both actual and punitive, for the breach of an alleged oral contract to pay plaintiff the sum of $100 per month during his lifetime or until he was able to return to work for defendant company.

Plaintiff has appealed from an order striking from the amended petition those allegations seeking to recover future actual damages and all punitive damages.

For a proper understanding of the questions involved it is necessary to summarize the allegations of the amended petition. They are as follows:

Plaintiff had worked for defendant company in its home office in Fort Scott since 1941, and was so employed during 1947, at which time the company was carrying on an extensive remodeling and reconstruction operation in its office building. In the course of such work large quantities of dust were created which when inhaled by plaintiff over a period of several months resulted in his severe illness, forcing him to cease work in October of that year. He was under the care of physicians and confined to his home. In December, 1947, while still ill and confined, officials of defendant company were informed of the cause of his illness, that is, inhalation of the dust and dirt from the construction program being carried on. At or about this time defendant Gordon, a director and secretary of the company, and acting within the scope of his authority as agent of the company, gave plaintiff the sum of $150 in cash, which he purported to be from the company and to show that the company was in good faith with plaintiff and would discharge its liability to plaintiff for its responsibility for his illness.

In January, 1948, while plaintiff was still under the care of a physician and confined to his home, and after he had become obligated to pay large hospital and medical bills and had received no wages or other compensation, with the exception of the sum of $150 before mentioned, plaintiff informed defendant company that his illness was entirely its fault and that it was liable to him in damages, all of which plaintiff in good faith believed, and he threatened to bring an action for damages. This information and threat were given to defendant Gordon and two other ranking officers of the company. As a result thereof and as an inducement for plaintiff to refrain from bringing a damage action, Gordon, who had been plaintiff's immediate superior, acting in the course of his authority, orally promised plaintiff, on behalf of the company, to pay plaintiff $100 per month until he was able to return to his employment. Further, Gordon orally personally guaranteed such payments of $100 per month and plaintiff agreed to accept the offer and to forbear bringing an action for damages against the company and Gordon.

Pursuant to the agreement the company paid plaintiff $100 at the end of January, February and March, 1948, which payments were accepted by plaintiff and no damage action was filed.

In April, 1948, although plaintiff had not fully recovered from his illness, which fact was well known to defendants, the latter requested him to return to work. Plaintiff resumed his work part time but about a month later became so ill that he could not continue and was again confined to bed.

In June, 1948, while plaintiff was in a hospital, defendants, well knowing that he and his parents considered defendants liable and were considering and threatening to bring an action for damages, requested plaintiff's father, who was acting as agent of and under express authority from plaintiff, to come to defendants' office and discuss the matter with them. Plaintiff's father did so and at that conference Gordon, acting in his capacity as agent of the company and as an inducement for plaintiff to refrain from filing suit, orally agreed to pay plaintiff the sum of $100 per month "as long as he should live or until he was able to return to work." This offer was accepted and pursuant thereto the company made such payments from June, 1948, through October, 1949. Plaintiff fulfilled his part of the agreement by forbearing to bring a damage action.

In the meantime defendants, realizing that plaintiff was permanently disabled, made a claim in plaintiff's name under a group insurance policy carried by plaintiff and the company under which plaintiff was to receive the sum of $1,000. There was some discussion of this matter between plaintiff's father and company officials and it was again agreed that in consideration of plaintiff's forbearance to sue for damages the company would continue the $100 monthly payments and would do so at the expiration of the monthly payments under the group insurance policy. Meanwhile, in October, 1949, the statute of limitations (G. S. 1949, 60-306 [third]) had run and plaintiff was thus barred from prosecuting a damage action in tort.

In November, 1950, plaintiff received the last payment under the permanent total disability clause of the group insurance policy and orally requested defendants to fulfill their agreement by commencing the monthly payments of $100. This they refused to do and have continued to refuse.

This action was commenced on September 1, 1951.

Paragraph V of the amended petition reads:

"Plaintiff is totally and permanently disabled and in November, 1949, was 29 years of age. Plaintiff has been damaged, therefore, by the breach of said agreement in the sum of $46,332.00."

Paragraph VI reads:

"At all times material hereto defendant corporation, through its officers, agents and directors, and defendant, Gordon, knew and believed that plaintiff had a valid cause of action for damages against defendants and believed that if plaintiff procured the advice of counsel or pursued his legal remedies that defendants would be liable for total and permanent personal injuries to plaintiff and that, therefore, defendants, jointly and severally, wilfully, wantonly, maliciously, fraudulently, and oppressively procured said agreement of plaintiff to forbear securing advice of counsel or commencing an action for damages against defendants and maliciously, oppressively, wilfully and fraudulently breached said agreement after plaintiff's cause of action for damages had been barred by statute. For these acts of defendants plaintiff is entitled to exemplary damages in the sum of $80,000.00.

"WHEREFORE, plaintiff prays judgment against defendants in the sum of $126,332.00 and the costs of this action."

Defendants moved to strike from paragraph V the figures "$46,-332.00" for the reason that the amount as so stated "is based upon the computation of the alleged life expectancy of the plaintiff according to the American Experience Table of Mortality and, therefore, includes many years which are anticipated, and there is no legal basis upon which any possible cause of action could now be brought with the possible exception of the $100.00 per month from October, 1949, up to the date of the filing of the petition."

Defendants also moved to strike all of paragraph VI on the ground the allegations of the amended petition and of such paragraph are insufficient to sustain any exemplary damages.

These motions were sustained and the order covering such ruling reads:

"It is, therefore, by the court considered, ordered and adjudged that all of paragraph No. VI of plaintiff's amended petition be and is stricken therefrom; that the figures $46,332.00 in paragraph No. V of said amended petition be likewise stricken; that the plaintiff may amend by showing a demand of not to exceed $100.00 per month from, October, 1949, up to the date of the filing of the original petition herein, or until such time as may be allowed plaintiff upon application therefor."

We therefore have two questions: First, under the allegations of the amended petition is plaintiff entitled to recover future payments based on his life expectancy, or is he limited to the amount due at the time the action was filed or, say, at the time of trial? And,

second, do the allegations of the amended petition support the claim for punitive damages?

The questions will be discussed in that order.

The gist of plaintiff's claim is that he is permanently disabled through the actions and negligence of defendants; that the latter, as an inducement for him not to bring a tort action for damages, promised to pay him $100 per month "as long as he should live or until he was able to return to work"; that he, in reliance on such promise, forbore bringing suit; that the statute of limitations has now run on that cause of action; that defendants refuse to make the monthly payments and therefore he is entitled to recover the entire amount due under the agreement based on his life expectancy.

It is clear that the agreement, as pleaded, was an executory bilateral contract. Each party was to do certain things—plaintiff was to forbear bringing a tort action, and defendants were to make the payments. Plaintiff's own allegations affirmatively show that he has fully performed his part of the contract, that is, he permitted his supposed tort action to become barred. There was no obligation remaining for him to perform at the time of the alleged breach by defendants in November, 1950. The contract, although originally an executory bilateral one, thus became in law a simple unilateral promise for the payment of money at specified intervals, and, notwithstanding counsel for both sides have filed extensive briefs covering the field of damages for breach of contract, we confine ourselves to the application of the rule to the precise situation here presented. In 17 C. J. S., Contracts, § 472, p. 973, relating to rights of a promisee to sue for damages on the theory of anticipatory breach of contract, it is said:

"While there exists some contrary opinion, by the weight of authority the doctrine of anticipatory breach is applicable only where the contract contains interdependent obligations, and does not apply where the contract is executory only on behalf of the other party. Hence, it does not govern actions on contracts to pay money at times specified, where one party has completely executed the contract, and it is executory only on the part of the other party." (p. 977.)

In Williston on Contracts, Revised Edition (1937), Vol. 5, § 1290, at page 3676 we find the following:

"In a unilateral contract for the performance of several disconnected acts, or for the payment of several sums in instalments, or in a bilateral contract that has either been wholly performed on one side, or in which the promises are independent, a breach as to one or any number less than the whole of the promised acts is generally partial."

At § 1328, pp. 3734 and 3735, same volume, the author continues:

"The propriety of not allowing an immediate action for anticipatory repudiation of all unilateral contracts has sometimes been questioned, but if, as has been argued in previous sections, the whole doctrine was founded on a confusion of a right of action with a defense, it seems undesirable to enlarge the boundaries of the doctrine. Moreover, when the only requirement of the contract is the promisor's future performance it more obviously is unjust to hold him liable to action immediately, than where performances are to be rendered by both parties. In the latter case, waiting until the agreed time has its effect on the whole agreed exchange; in the former case, allowing the promisee immediate recovery is nothing but a direct bonus to the promisee beyond what he was promised and a direct penalty to the promisor."

In 12 Am. Jur., Contracts, § 394, p. 973, the rule is stated:

"The doctrine of anticipatory breach applies to contracts which embody mutual and interdependent conditions and obligations. Indeed, it has been said that it applies only to contracts involving interdependent obligations. It does not apply to 'mere promises to pay money, or other cases of that nature where there are no mutual stipulations.'

"The general rule is that the doctrine of anticipatory breach does not apply to a contract which the complaining party has fully performed. . . ."

That Kansas has followed the general weight of authority view is illustrated by the case of *Upham v. Shattuck,* 151 Kan. 966, 101 P. 2d 901, where in syllabus 1 it was held:

"The doctrine of an anticipatory breach of contract by which the time to sue thereon may be accelerated applies to bilateral executory contracts; it does not apply to a mere promise to pay money, such as a negotiable promissory note."

and in the course of the opinion it was said:

"However, appellant contends that since Clyde Shattuck has denied liability on the notes and has conveyed his property, without consideration, to the extent he has rendered himself insolvent, there has been an anticipatory breach of his contract to pay the debt evidenced by the notes, the effect of which is to accelerate the due date of the notes and authorize an action upon them at once. The doctrine sought to be applied is that of an anticipatory breach of contract. This doctrine applies to bilateral executory contracts (13 C. J. 651-655; 17 C. J. S. 973, 977; *Wilson v. National Refining Co.,* 126 Kan. 139, 266 Pac. 941)—those which embody mutual and independent conditions and obligations. 'It does not apply to mere promises to pay money, or other cases of that nature where there are no mutual stipulations.' (12 Am. Jur. 973.) To the same effect, see 13 C. J. 655; 17 C. J. S. 977, and cases cited in support of those tests (sic). No authority is cited, and our own search discloses none, which applies the doctrine to an ordinary promissory note." (p. 968.)

Applying the rule to the instant case, and irrespective whether plaintiff's theory be denominated that of anticipatory breach or

present breach as to past due installments coupled with repudiation, the fact remains that under plaintiff's allegations the contract as it now stands is simply a unilateral promise for the payment of money at specified intervals, and his present recovery is limited to the amount due at the time of filing suit, or, at most, down to the time of trial.

Among the many authorities cited by plaintiff in support of his contention, all of which have been noted and considered, is the case of *Spencer v. Casualty and Surety Co.*, 116 Kan. 491, 227 Pac. 357, which, on first reading, would indicate a view contrary to that which we have expressed. However, a close examination of the decision does not reveal that the precise question here before us was even urged or decided in that case. There it appears the defendants' principal contention was that damages allowed should be based on the number of years plaintiff would have been able to work as a fireman had the injury not occurred, rather than on his life expectancy. Here the alleged agreement was to pay plaintiff the sum of $100 per month "as long as he should live *or until he was able to return to work.*" (Our emphasis.)

There is still another very practical reason why one in plaintiff's position should not presently be permitted to recover an award of damages based on his life expectancy. Throughout his amended petition are allegations as to the seriousness of his physical condition. It is only reasonable to assume that at the time the alleged agreement was made neither party to it considered plaintiff to have a life expectancy of a physically normal individual. Damages are not to be based upon mere conjecture or speculation, and we think plaintiff cannot be heard to claim serious physical permanent disability on the one hand, which condition existed at the time the alleged agreement was made, and at the same time to claim damages based on a normal life expectancy. Suppose he were to die a year or two from now. The following, from "Selected Readings on the Law of Contracts," (1931), at page 1149, appears to be quite in point:

"Arguments going to the merits against allowing an immediate action for anticipatory repudiation have not been lacking. These, too, must be briefly set out before a complete and informed appraisal of the merits of the fundamental question involved can be made. The first objection on the merits, from the individual standpoint, is the practical difficulty of assessing damages prospectively. This is the most specific objection and is sometimes asserted very vigorously. It is said that a defendant may thus be mulcted in damages in advance for losses that in reality, as the events turn out, may never materialize."

Insofar as the question of actual damages is concerned the ruling of the lower court was correct.

There remains, then, the question of punitive damages, all allegations concerning which were stricken.

The rule is well-stated in the recent case of *Moffet v. Kansas City Fire & Marine Ins. Co.*, 173 Kan. 52, 244 P. 2d 228, where, at page 57, it was said:

"But what about the ruling on appellant's motion and demurrer with respect to punitive damages? The petition was predicated on breach of contract, a refusal to pay the insurance. As a general rule, damages for breach of contract are limited to pecuniary loss sustained. According to the overwhelming weight of authority exemplary or punitive damages are not recoverable in actions for breach of contract in the absence of independent tort or wrong causing additional injury and in a few other situations not present here. (15 Am. Jur., Damages, §§ 272, 273; 25 C. J. S., Damages, § 120; Restatement, Contracts, Vol. 1, § 342; anno. 84 A. L. R. 1345.)"

Here, as in that case, no tortious act is alleged to have been committed in connection with the alleged breach of contract, and, as there said, the mere use of words such as "wilfully, wantonly, maliciously, fraudulently and oppressively," standing alone, is not a substitute for essential allegations disclosing wanton and malicious conduct. The order of the lower court striking all allegations as to punitive damages was clearly correct.

It therefore follows that the orders and judgment appealed from are affirmed.