Blanche P. Eskin and Chicago Title and Trust Company, as Trustee Under Trust No. 35942, Third Party Plaintiffs, Third Party Counter Defendants, Appellees, v. Oscar and Bertha Freedman, Third Party Defendants, Third Party Counter Plaintiffs, Appellants.

Gen. No. 49,311.

First District, Fourth Division.

October 28, 1964.

Milton O. Gordon, of Chicago, for appellant.

Robert E. Wiss, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

In August of 1961 the City of Chicago filed a complaint for mandatory injunction seeking to compel the correction of certain building ordinance violations alleged to exist with respect to the premises commonly known as 848–854 West Waveland Avenue, Chicago. The suit named as parties defendant the Chicago Title and Trust Company, as trustee under a certain trust, and Blanche P. Eskin, who apparently was the beneficiary under the said trust. It was stated in the third-party defendants' brief that Blanche P. Eskin and Chicago Title and Trust Company, as trustee, filed an answer to the City's complaint and filed a third-party complaint against Oscar and Bertha Freedman, lessees of the premises, alleging that the Freedmans had breached a covenant of the lease whereby they as lessees agreed to care for and maintain the demised premises in good condition. (None of this appears in the record.)

The Freedmans, hereafter referred to as counterplaintiffs, thereupon filed a counterclaim for breach of an implied warranty that the premises were fit for the specific type of use and occupancy for which they were demised.

The Chicago Title and Trust Company and Blanche P. Eskin will hereafter be referred to as the counterdefendants.

On October 16, 1961, an order was entered by the court dismissing the counterclaim. From that order the counterplaintiffs appeal.

146

In limine it might be well to quote from Ready v. Ready, 33 Ill App2d 145, 178 NE2d 650, where at page 153 we said:

> "The practice of law in the final analysis is an art and it would seem that the work of both the trial and reviewing courts would be greatly eased if there was a greater adherence to a reasonable observance of the principles governing proper pleading. . . ."

The court also says that:

> ". . . it does not seem too much to require the party to indicate to the court the particular section of the statute upon which he relies. . . ."

In the instant case, the counterclaim was not a masterpiece of pleading. It alleged in substance that the parties entered into a lease of the premises for a term of five years commencing on August 1, 1955 and ending July 31, 1961. The premises were to be used and occupied by the counterplaintiffs, "for The Conduct of a First Class Rooming House Business and for no other purpose or purposes whatsoever." It also alleged:

> "That at the time the said lease was executed, all ordinances, rules and regulations of the City of Chicago, pertaining to the operation of said rooming house, were fully complied with, and that no building, housing or zoning violations existed at the time said lease was executed or was to commence."

It is further alleged that the lessors (the counter-defendants) at the time the lease was entered into were not lawfully entitled to lease the said premises as a rooming house, "this being more specifically set forth in a complaint for Injunction and for the relief

147

filed by the City of Chicago against the counter defendants in this entitled cause . . ." (The complaint of the City of Chicago appears nowhere in the record.)

The counterclaim alleges that the counter-defendants admitted the supposed allegations made by the City inasmuch as on August 23, 1956, they consented to the entry of a mandatory injunction against them in favor of the City of Chicago "requiring them to deconvert from 49 units to 12 dwelling units, which was the original manner in which said building was constructed."

The counterclaim further alleges that from April 10, 1957, the counterplaintiff has expended sums of money to correct violations and make repairs ordered by the City of Chicago; that certain rentals were lost because the City of Chicago prohibited the use of certain portions of the property, and the amounts are set out in detail. Counterclaimant asks for judgment in the sum of $8,420.34.

On October 5, 1961, an amendment to the counterclaim was filed, increasing the ad damnum and including a verification. Whether this counterclaim was filed with or without leave of the court does not appear in the record.

To this counterclaim an answer was filed by the Chicago Title and Trust Company and Blanche P. Eskin. The answer is as extraordinary as the rest of the pleadings in the case. Among other things, it states that the counterplaintiffs have been in continuous, uninterrupted and exclusive possession of the premises, under three leases, since about July 1943, or a period of approximately 18 years. The answer also asks that certain paragraphs of the counterclaim be stricken, denies others, and asks that the entire counterclaim be stricken on the ground that the said counterclaim had not been verified, and finally, prays that the court strike the counterclaim, or in the alternative,

"grant judgment in the counterdefendants' favor there-on, . . ."

On September 19, 1961, the counterdefendants filed a motion to strike the counterclaim on the ground that it was not verified and that it was improper under the Practice Act. On October 16, 1961, the court entered an order striking the counterclaim. The counterplaintiffs took an appeal from that record. The appeal was dismissed in Eskin v. Freedman, 38 Ill App2d 327, 187 NE2d 307, on the ground that the order was not final and did not contain the necessary provision set out in Ill Rev Stats 1959, c 110, § 50, and thereupon the court entered a subsequent order on January 16, 1962, in which the court struck Blanche Eskin and Chicago Title and Trust Company, as trustee, wherever it appeared in the complaint of the City of Chicago and substituted in its place the Cosmopolitan National Bank, as trustee, and further ordered that the mandatory injunction which had previously been entered was extended thirty days and "the defendant is to have the work completed by February 19, 1962"; and the hearing was set for February 19, 1962, "NUNC PRO TUNC, December 20, 1961." * On January 31, 1962, an order was entered amending the third-party complaint by adding a paragraph setting out that the third-party defendants, the Freedmans, lessees, have been in "continuous, uninterrupted and exclusive possession of said premises under three leases since about July, 1943, or a period of approximately 18 years, a copy of the first two leases are attached hereto as EXHIBITS B & C and made a part hereof." A further paragraph stated:

"That under the terms of the lease and/or leases herein, lessees agreed and covenanted to

---

* This appears in the record and is not abstracted.

149

make repairs and do other types of maintenance or upkeep including, without limitations, cleaning, painting, plastering, sanding, washing, wallpapering, replacement and/or repair of fixtures and equipment, piping and wiring, and at the termination of the lease and/or leases herein to return the premises and all equipment and fixtures in good condition, ordinary wear and tear excepted."

The amendment further alleges that the lessees breached the agreements and covenants, resulting in extensive damage to the third-party plaintiffs which would amount to approximately $25,000, and that under the term of the lease and/or leases the lessees agreed to pay all costs, charges and expenses, including counsel fees, etc., incurred in enforcing lessees' obligation hereunder, and that the lessees breached that agreement to the damage of the lessor of approximately $5,000. The amendment then asks for an accounting, and the third-party defendants are ordered to answer or plead in 20 days. There is nothing in the record indicating whether or not there was any pleading to the amendment.

After the cause had been dismissed in this court an order was entered by the trial court on May 22, 1963, which recited that the counterplaintiffs had asked for an order amending the order of the court entered on October 16, 1961:

". . . to include an express finding that there is no just reason for delaying an appeal, by the said Third-Party Counter plaintiffs from said order of October 16, 1961, as provided in Section 50(2) of the Illinois Civil Practice Act, due notice having been given to all parties concerned, . . ."

The court so amended the order and also amended the order of October 16 to the effect that

150

". . . the court finds the issues in favor of the Third-Party Counter defendants; that the Third-Party Counter plaintiffs take nothing from their Amended Third-Party Counter claim against the Third-Party Counter defendants, and that the Third-Party Counter defendants go hence without delay [sic]; and further, that there is no just reason for delaying an appeal by the Third-Party Counter plaintiffs, Oscar Freedman and Bertha Freedman, from this order."

The order further provides that the order of October 16, 1961, dismissing the amended counterclaim, remain in full force and effect. From that order a notice of appeal was filed on July 19, 1963. That appeal is the instant appeal.

In their brief the counterplaintiffs state that it is their theory of the case that the counterclaim filed by them stated a cause of action and the trial court erred in dismissing it. The theory stated in the brief of the counterdefendants is that the counterclaim does not state a cause of action in that the alleged "implied warranties" upon which the counterclaim is based do not exist as a matter of law. In support of their contention the Freedmans cite Allmon v. Davis, 248 Ill App 350, and Gibbons v. Hoefeld, 299 Ill 455, 132 NE 425. Both of these cases deal with constructive eviction of the tenant and they are not applicable to the instant case.

The Illinois courts have held that on a demise of premises to be used for a specific purpose there is no implied covenant that the premises are fit for that purpose. Ciskoski v. Michalsen, 19 Ill App2d 327, 152 NE2d 479; Long v. Joseph Schlitz Brewing Co., 214 Ill App 517; Cohen v. Plumtree, 170 Ill App 311; Rubens v. Hill, 115 Ill App 565, affd on other grounds, 213 Ill 523, 72 NE 1127; Lazarus & Cohen v. Parmly,

151

113 Ill App 624. In Sunasack v. Morey, 98 Ill App 505, at 507 the court said:

"There is, in respect to the leasing of property, as in respect to the sale thereof, no implied warranty or undertaking on the part of the landlord or grantor that the premises are in a safe and healthy condition or fit for occupancy, either for the purpose of business or residence. A lease is a sale of the right to use and occupy the premises for a certain time. As to both lease and sale the rule caveat emptor applies. Nor is landlord or grantor liable for representations as to conditions concerning which the lessee or grantee has the same opportunity for observation and examination that has the lessor or grantor, *unless by some artifice, the lessor or grantor prevents the lessee or grantee from making an examination as to latent defects known to the lessor or grantor and unknown to the lessee or grantee, and of which knowledge would not be obtained by an ordinary and reasonable examination, as that the premises had lately been occupied by persons sick with the small-pox.* [Citing cases.]" (Emphasis supplied.)

In Rubens v. Hill, 115 Ill App 565, there is a discussion of this rule. In that case the leased property was a furnished house let for use as a dwelling house. The court cites the English case of Smith v. Marrable, 11 Meeson & Welsby, 5. This case was decided in 1843. It concerned a furnished house which was let and was found at the time the lessees moved in to be infested with bugs. The court held that a man who lets a furnished house does so under the implied condition or obligation that the house is in a fit state to be inhabited. That case was subsequently distinguished in Sutton v. Temple, 12 Meeson & Welsby, 52 (1843).

where the demise was a pasture land to be grazed by animals of the lessee. The lessee put cattle into the demised pasture land and the cattle died because fertilizer spread over the land had been poisoned with paint. The court there held that there was no implied covenant that the premises were fit for the purpose for which they were let, and distinguished Smith v. Marrable, supra, on the ground that in the latter case the letting was of goods and chattels in connection with the house and that the goods and chattels were for a special purpose.

In Rubens v. Hill, supra, the court says:

". . . The authority of this case seems never to have been questioned either in England or in this country, but, on the contrary, has received very general recognition as good law. . . ."

The court also points out that the Sutton case has never been cited in the Illinois courts, although the principle has received frequent recognition. [Citing cases, p 570.] The court also says, at page 573:

". . . The case of White v. Walker, 31 Ill 422, is the only case calling for an expression of our Supreme Court respecting the doctrine of Smith v. Marrable that we have been able to find, and none have been cited by counsel. There the present Chief Justice of the Supreme Court of the United States contended for the application of the doctrine of the English case but the court only went to the extent of using the following cautious language: 'The premises were leased for a boarding house, and if they become uninhabitable for such purpose by reason of occurrences subsequent to the leasing, over which the lessee had no control, and which were in some degree instigated by the lessor, the tenant might have

had the legal right to quit the premises. The doctrine of Smith v. Marrable would seem to go to this extent.' . . ."

It is worthy of note that the rule of caveat emptor as applied to a demise of real property is being eroded in other jurisdictions with respect to sales of real property. Barder v. McClung, 93 Cal App2d 692, 209 P2d 808 (1949); Morrow v. Renniere. Process, Inc., 222 App Div 100, 225 NYS 250 (1927). See 5 DePaul Law Rev 263, 269–273 (1956) Comment, "Caveat Vendor—a Trend in the Law of Real Property."

■ ■ It has been held that parties to a sale or demise of premises are held to have equal knowledge concerning the existence of municipal ordinances in force when the transaction was executed. Kiernan v. Bush Temple of Music Co., 229 Ill 494, 82 NE 410. This rule does not cover knowledge concerning the existence of ordinance violations.

■ In the instant case the counterplaintiffs failed to allege in their counterclaim either that the counterdefendants, the lessors, knew of the existence of the violations when the lease was executed and failed to disclose such knowledge to the counterplaintiffs, the lessees, who were ignorant of such violations. There is no indication in the counterclaim as to when the violations occurred, whether they were during the period when the counterplaintiffs were in occupancy or were prior thereto. Under the rule laid down in the cases heretofore cited, these omissions were fatal to the counterclaim and the court did not err in dismissing it.

Upon the record before us, we have no alternative except to sustain the order of the trial court dismissing the counterclaim which was made a final order on motion of the counterplaintiffs on May 22, 1963.

154

The judgment of the Superior Court of Cook County is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.