No. 45,117

JOE HESS, *Appellee*, v. WALTER JARBOE, *Appellant*.

(443 P. 2d 294)

Opinion filed July 13, 1968.

*Van Smith*, of Jetmore, argued the cause and was on the brief for appellant.

*Paul B. Watson*, of Jetmore, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: An action was brought to recover damages arising by reason of an ouster from certain farm and pasture lands in Hodgeman county, Kansas. A jury returned verdicts in favor of the plaintiff, Joe Hess, for actual and punitive damages. The defendant, Walter Jarboe, appeals from that portion of the judgment awarding punitive damages.

The defendant contends the evidence failed to establish any tortious act which would justify the allowance of punitive damages. Therefore, a detailed review of the evidence is necessary.

The evidence generally is not in dispute. Walter Jarboe is an established farmer and stockman. Joe Marnell worked for him for over twenty years and the two are close personal friends. Jarboe held written leases on land referred to as the O'Connell and Raser leases in Hodgeman county. These leases cover 2600 acres of pasture land and 500 acres of cultivated land. Joe Marnell and his family have lived on these premises for many years and in the

wintertime Marnell has cared for cattle which Jarboe has wintered on the place.

Jarboe advised Marnell that he would like to get Marnell started in the cattle business and suggested that Marnell sublease the O'Connell and Raser lands from him. Marnell owned no farm machinery so he talked with his brother-in-law, Joe Hess, about the offer. Hess had a farming operation of his own and owned farm machinery. Marnell and Hess formed a farm partnership. Their partnership agreement was entirely oral. They talked with Jarboe about subleasing the O'Connell and Raser lands. The testimony concerning their arrangements with Jarboe· is not entirely clear but both Jarboe and Marnell testified at the trial that it was undestood Jarboe could watch their operation and any time he was not satisfied he had a right to take the land back. Jarboe retained his written leases on the land. He assisted the partnership in securing a line of credit by talking to a banker at Larned, and by signing as surety on a partnership note given to a bank in Parsons.

The partnership took over the leases on October 1, 1963, and paid Jarboe for the wheat growing on the premises. The Raser land rented for $4800 cash rent per year payable semi-annually October 1 and April 1. The O'Connell land rented for $2500 cash rent per year payable $200 each month except for December when $300 was due. The agreement to sublease called for these same rental payments. The cash rentals due were paid by the partnership.

Marnell continued to live on the leased premises. In October 1963 the partnership purchased cattle which they wintered and which they pastured the next spring and summer. These cattle were sold in the fall of 1964 and thereafter no replacement cattle were purchased by the partnership. On April 2, 1965, the partnership mailed Jarboe two checks totaling $2600 and these checks were cashed. One check for $200 covered a month's rent on the O'Connell lease and a $2400 check covered the rent on the Raser land to October 1, 1965. The partnership owned no cattle at this time but there were 189 acres of wheat growing on the premises.

Shortly after receiving the checks Jarboe advised Marnell that he had decided to take over the land and desired to settle for the growing wheat and return the pasture rentals. Marnell and Hess discussed the matter and tentatively agreed they should be paid fifteen dollars an acre for the growing wheat.

On April 16 Marnell, Hess and Jarboe met in Dodge City to discuss Jarboe's decision to take over the land. Jarboe offered to pay the fifteen dollars per acre for the growing wheat and to return the $2600 pasture rent paid by the partnership on April 2. Hess was not satisfied. He wanted an additional payment for the pasture land which had not been used by the partnership since October 1964. It was understood between Marnell and Jarboe that Marnell could have his old job back when the subleasing agreement was terminated. Hess didn't want to give up the cultivated ground and offered to let Jarboe take the pasture land if Hess could continue to farm the cultivated land for himself. Jarboe refused and the meeting ended without any agreement being reached between Hess and Jarboe.

On May 1 Marnell went back to work for the defendant, Walter Jarboe, and Jarboe issued two checks payable to the partnership. These he gave to Marnell. One check for $2835 was in payment of 189 acres of growing wheat at fifteen dollars per acre and the other for $2600 was for the grass rentals paid by the partnership on April 2. Hess refused to accept his share of these checks from Marnell and testified at the trial as follows:

"About the middle of May, 1965, I had another conversation with Joe Marnell. I asked Marnell if they had made arrangements for taking the land back. Marnell said, 'Yes, they was up here today,' and reached in his pocket, pulled out those checks and said, 'They give me this,' and I said, 'Joe, I told you a dozen times not to accept any damned money—not to accept any money from them'."

The checks were made payable to both Joe Marnell and Joe Hess. They were never presented to the bank for payment. The partnership was dissolved by agreement on June 11 and Hess received a partnership check for $1240. This amount was due him for working partnership ground and for pasturing partnership cattle on his own wheat during the spring of 1964. The bank accounts were closed out. At the time of dissolution the partnership owed $6860 in debts incurred during its twenty months of operation.

The plaintiff, Joe Hess, filed the present action on November 12, 1965, to recover his share of damages arising by reason of the ouster. His action is based upon a breach of the sublease agreement. It was stipulated prior to trial that plaintiff was entitled to recover $1417.50 as the agreed value of plaintiff's share of the wheat. A verdict was directed for said amount. At the end of the trial the jury returned a verdict in favor of plaintiff for an

additional sum of $1300 for return of pasture rentals plus $4500 in punitive damages.

The jury answered the following special questions in regard to punitive damages.

"4. Did the defendant, Walter Jarboe, intend to harm the plaintiff, Joe Hess, when he retook possession of the Raser and O'Connell farm leases?

"ANSWER: Yes.

"5. If you answer Question No. 4 above in the affirmative, will you please state in what manner and how he intended to harm Mr. Hess?

"ANSWER: Wanton disregard for the rights of others."

It is noted that the intentional act of retaking possession of the land is specified as the basis for awarding punitive damages. This is the same act which forms the basis for plaintiff's cause of action for breach of the sublease agreement.

Before considering the questions of law presented we pause to note that one partner, Marnell, was not made a party in this action. The action was brought to recover for a breach of a partnership agreement. No question was raised in the action concerning proper joinder of parties and that question is not before us.

Defendant's appeal is directed solely toward the allowance of punitive damages.

Punitive damages are not allowed because of any special merit in plaintiff's case, but are imposed by way of punishing a defendant for an invasion of rights in cases characterized by malice, fraud or willful and wanton disregard for the rights of others. In actions based upon tort an element of malice, fraud or wanton disregard for the rights of others must be proved in order to substantiate an award for punitive or exemplary damages. The acts indicating malice, fraud or wanton conduct must be established by evidence. (*Stalker v. Drake,* 91 Kan. 142, 136 Pac. 912; *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, 133 P. 2d 149; *Will v. Hughes,* 172 Kan. 45, 238 P. 2d 478; *Watkins v. Layton,* 182 Kan. 702, 324 P. 2d 130; *Cope v. Kansas Power & Light Co.,* 192 Kan. 755, 760, 391 P. 2d 107; *Walker v. Fleming Motor Co.,* 195 Kan. 328, 404 P. 2d 929.)

In actions based upon a breach of contract the damages recoverable are those which might reasonably have been anticipated by the parties and are limited to pecuniary loss which naturally occurs as a proximate result of the breach. (*Cain Shoes, Inc. v. Gunn,* 194 Kan. 381, 399 P. 2d 831; *Cain v. Grosshans & Petersen, Inc.,* 196 Kan. 497, 413 P. 2d 98.)

It is a well accepted general rule that an unjustified breach of a contract does not entitle a party to punitive damages. (Restate-

ment of the Law of Contracts, Vol. 1, § 342; 84 A. L. R. Anno. p. 1345; 25 C. J. S., Damages, § 120; 22 Am. Jur. 2d, Damages, § 245.)

An exception to this general rule is recognized when some independent tort or wrong results in additional injury which justifies the assessment of punitive damages by way of punishment of the wrongdoer. In such a case the proof of the independent tort must indicate the presence of malice, fraud or wanton disregard for the rights of others.

This court in *Moffet v. Kansas City Fire & Marine Ins. Co.*, 173 Kan. 52, 244 P. 2d 228, said:

"But what about the ruling on appellant's motion and demurrer with respect to punitive damages? The petition was predicated on breach of contract, a refusal to pay the insurance. As a general rule, damages for breach of contract are limited to pecuniary loss sustained. According to the overwhelming weight of authority exemplary or punitive damages are not recoverable in actions for breach of contract in the absence of independent tort or wrong causing additional injury and in a few other situations not present here." (p. 57.)

The position adopted in *Moffet* was reaffirmed in *Mabery v. Western Casualty and Surety Co.*, 173 Kan. 586, 250 P. 2d 824, and was later discussed by the United States Court of Appeals, Tenth Circuit, in *Worden v. Tri-State Insurance Company*, 347 F. 2d 336, 343, (1965).

In the present case no independent tortious act is alleged and none appears in the evidence. Upon termination of the sublease agreement an offer of settlement for the pecuniary loss was accepted by the partner who was living on the land. Possession was obtained by defendant without committing an independent tort. Neither the partnership nor the plaintiff suffered injury from any independent wrongful act of defendant. The verdict of the jury limited plaintiff's pecuniary loss from the breach of contract to the value of the wheat and to a refund of pasture rentals previously tendered by defendant.

The evidence does not bring the facts of this case within the exception to the general rule and punitive damages cannot properly be awarded in the action.

The judgment for actual damages in the sum of $2717.50 is affirmed and that portion of the judgment allowing punitive or exemplary damages is reversed.

FATZER, J., dissents from paragraph 3 of the syllabus and the corresponding portion of the opinion.