No. 47,722

SERVICE OIL COMPANY, INC., *Appellee,* v. HOWARD I. WHITE, JR., *Appellant.*

HOWARD I. WHITE, JR., *Appellant,* v. JOHN T. ARNOLD ASSOCIATES, INC., *Appellee.*

(542 P. 2d 652)

Opinion filed November 8, 1975.

*Bruce B. Fitts,* of Warner, Bailey, Holmes, O'Hara & Fitts, of Wichita, argued the cause and was on the brief for appellant.

*Robert T. Cornwell,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *Michael Jennings,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This is an action for damages arising out of the execution of a five year lease on a filling station site in Wichita, Kansas. The trial court heard the evidence and awarded a judgment to the lessee, Service Oil Company, Inc., for $3,957.35 actual damages and $1,500.00 punitive damages. A further judgment of $628.84 was awarded to John T. Arnold Associates, Inc., realtors, on a commission due for negotiating the lease. The lessor, Howard I. White, Jr., has appealed from these judgments. We will refer to the parties as Service Oil, Arnold and White respectively.

Service Oil leases service stations and then subleases them to operators who purchase products from Service Oil. In January, 1973, Service Oil learned that it was not going to be able to renew a station lease in Wichita which was to terminate on May 31, 1973, and which had been subleased to a very good operator. Service Oil began looking for a new location for this operator and contacted Arnold, a real estate firm in Wichita. Service Oil told Arnold of its need of a site in Wichita for a service station to be opened by June 1, 1973.

Arnold's salesman Jack Pearce knew of a station location which had been vacant for several years. It had been built and was owned by White. Arnold prepared a listing agreement covering Lot 1, Block G, Maplewood Addition to the City of Wichita, Sedgwick County, Kansas. Pearce took the listing agreement to White and White made changes in the description because there was a house located on the back of the lot which he did not want to lease. The legal description in this listing agreement was changed

to: "Lot 1 Block G, Maplewood Addition to City of Wichita, Sedgwick Co. Kans. Texaco Station, 150.95 on Pawnee (what is paved) approximately 100′ Deep." The reference to "Texaco Station" was made in the description because Texaco was the previous lessee. The terms upon which a lease would be granted by White were inserted in the listing agreement.

After obtaining White's signature on the listing agreement the salesman advised Service Oil of the possible new location. Service Oil inspected the location, measured the paved area from the sidewalk to the rear of the station premises, and found it to be a hundred feet. It viewed the two pump islands which were fifteen feet back from the sidewalk. After Service Oil noted certain repairs were necessary before the station would be ready for occupancy, Service Oil and White agreed to the basic terms of a lease. Arnold's attorney prepared the lease. The premises were described as:

"All the paved area including the old Texaco Service Station located thereon being approximately the South 100 feet of said property described as Lot 1, Block 'G,' Maplewood Addition to the City of Wichita, Sedgwick County, Kansas, commonly known as 3118 East Pawnee, Wichita, Kansas."

White came to Arnold's office to sign the lease. The lease was read to him, word by word, including the description of the premises to be leased. White then wanted his attorney to review the lease before signing. This was done.

The final version of the lease was signed on March 21, 1973. The pertinent provisions of the lease contained the following obligations:

1. Service Oil agreed to pay White rent in the sum of $22,500.00 payable in monthly installments over a five year period;

2. White agreed to make certain minor repairs and replacements such as an overhead door, broken glass and inside painting, to be completed by May 15, 1973;

3. If the gasoline lines and tanks, which were necessary to the operation of the station, leaked White was to repair or replace them;

4. The use of the premises was restricted to use and occupation as a gasoline station, the sale of tires, batteries, accessories, and the sale and furnishing of services ancillary thereto;

5. The premises were to be ready for business on June 1, 1973; and

6. Service Oil agreed to keep and maintain the premises in good repair and maintain the same in compliance with all rules and regulations of the governmental agencies having jurisdiction.

Service Oil began getting the station premises ready to open

and contracted for the installation of a canopy. On May 11, the contractor notified Service Oil that the city would not issue a permit for the same. Service Oil and Arnold attempted to contact White to have him work out the problem but White was absent from the city. On May 17, Service Oil sent its house counsel to check on the problem and he found that some years prior White had deeded the front ten feet of the leased property to the city. Service Oil then had the premises surveyed to locate the front line of the property owned by White. It was five feet from the pumps.

White was advised by Arnold on May 17, that Service Oil had discovered the deed to the city and that the city was refusing to issue a permit for the canopy. White advised Arnold that when he paved the area and built the station for Texaco he had stubbed-in lines for additional pump islands farther back on the paved area. Arnold was advised to go to White's office in Wichita to get the blueprints, which would show the location of the stubbed-in lines. Arnold, with the help of White's secretary, searched for the blueprints but found only the invoices from the companies that constructed the station. Arnold and Service Oil checked with these companies but nobody knew anything about stubbed-in lines.

Service Oil then attempted to get a variance permit for the canopy from the city under the grandfather clause, thinking the station had been operated prior to the ordinance. It was unsuccessful. Further attempts were made by Service Oil and Arnold to contact White and discuss the problems but they were unsuccessful until May 30. On May 29, the survey was completed and Service Oil then knew that the pump islands were five feet from the property line and that the station could not be operated without moving the pumps. The city ordinances required the pumps to be located at least ten feet back from the property line. At the time White made the deed to the city he had decided to discontinue use of the premises for service station purposes.

By this time Service Oil had executed a sublease on the premises with its operator effective June 1. Service Oil had completed most of the repairs to the station for which White was obligated but failed to make by May 15, such as installing a new overhead door, replacing the broken glass, and the inside painting. Service Oil had installed the Vickers emblem to be used in identifying the station and had gone to the expense of trying to locate the stubbed-in lines to be used in moving the pumps so as to comply with the city ordinances.

On May 30, White told Arnold he would not pay any part of moving the pumps and this information was relayed to Service Oil. Service Oil moved the pumps so as to comply with the city ordinance and opened the service station for business on June 11. Demand was made on White for the miscellaneous repairs which White had agreed to make plus the cost of moving the pumps. Demand was refused and this action was filed.

White impleaded Arnold under a third party petition charging his fiduciary, Arnold, with bad faith and misrepresentation of facts which caused the damages, if any, incurred by Service Oil. Arnold denied the charge and counterclaimed against White to recover the balance of the commission due for successfully negotiating the lease. The case was tried to the court without a jury and the court made findings of fact and conclusions of law.

Pertinent findings of fact by the trial court included the following:

"3. The paved portion is that portion which is north of the city sidewalk and drive and is paved. It includes the ten-foot frontage which was dedicated to the City of Wichita by Howard I. White, Jr., on November 29, 1971.

"4. The defendant dedicated the ten-foot area as exhibited by plaintiff's Exhibit 2 for two reasons: First, to recover a 63-foot radius from an adjoining lot he traded the ten-foot area to the city; Second, he knew that the present tenant (Texaco) was relocating and he did not need the ten feet because he did not wish to lease the property as a service station.

"5. Howard I. White, Jr., knew on January 16, 1973, that the ten-foot section had been dedicated to the city. At no time did he disclose to the Service Oil Co., Inc., or John T. Arnold Associates, Inc., that the ten-foot portion had been dedicated.

"6. That Howard I. White, Jr., approved the legal description on January 16, 1973, and on March 21, 1973, following a thorough examination of the entire lease agreement and consultation with his attorney about the lease agreement. Prior to that time the legal description of the leased premises had been read to White by John T. Arnold.

"7. That Paragraph 3 of the lease provides as follows:

" 'The leased premises may and shall be used and occupied by Lessee for the following purposes and for no other purposes without the written consent of the Lessors and shall in no event be used in any manner or for any purpose deemed extra hazardous on account of fire or which shall be in contravention of any applicable law: gasoline service station and sale of TBA, and the sale and furnishing of services ancillary and incidental thereto.'

"8. That time was of the essence for Service Oil Co., Inc., in that they had to be ready to commence business on June 1, 1973, or lose a good dealer.

"9. That on May 30, 1973, Howard I. White, Jr., refused to move the islands for the gasoline pumps.

"10. That the gasoline pumps were subsequently moved at the direction of Service Oil Co., Inc., following a survey, at a total cost of $3,335.73; that

the filling station opened up on or about June 11, 1973; that the plaintiff failed to prove damages in the form of loss of profits.

"11. That the defendant Howard I. White, Jr., knew or should have known that the premises could not be operated legally as a service station without the front ten feet.

"12. That the damages sustained by Service Oil Co., Inc., of $3,335.73 were less than the damages would have been had Service Oil, Inc., chose to cancel the lease and look for another location on June 1, 1973.

"13. Under Paragraph No. 14 of the Lease involved herein, Howard I. White, Jr., was obligated to make certain repairs and alterations. Pursuant to the oral agreement of the parties after the execution of said Lease, said repairs and alterations were made by The Service Oil Company, Inc. Howard I. White, Jr., and The Service Oil Company, Inc., have agreed that the fair and reasonable cost and value of said repairs and alterations is Six Hundred Twenty- One Dollars and Sixty-Two Cents ($621.62). Howard I. White, Jr., admits that he is so indebted to The Service Oil Company, Inc., subject to his claims and defenses herein.

"14. John T. Arnold Associates, Inc., was the procuring cause of said Lease and is entitled to a real estate commission of One Thousand Three Hundred and Fifty Dollars ($1,350.00), less Seven Hundred and Fifty Dollars ($750.00), which it has received in the form of a check of The Service Oil Company, Inc., for the first and last months rent due under said Lease.

"15. Howard I. White, Jr., could not find the keys to the locks on the building, on the real estate involved herein, and, on or about March 27, 1973, at the direction of Howard I. White, Jr., John T. Arnold Associates, Inc., causes said locks to be replaced at a cost of Twenty-Eight Dollars and Eighty-Four Cents ($28.84)."

Pertinent conclusions of law by the trial court included the following:

"1. Paragraph 3 of Plaintiff's Exhibit 3, the lease, constitutes a representation that the premises are suitably constructed for the purpose of operating a service station. *Waterbury vs. Riss & Co.*, 169 Kan. 271, 290.

"2. That this representation also constituted an implied warranty in law that the premises were suitable for the uses set forth in the lease and the remedy for breach of contract, including recovery of damages proximately resulting from the breach is available.

"3. It is a general rule that parties are presumed to contract with reference to presently existing statutes, ordinances and regulations, the provisions of which will be read into and become a part of the contract by implication as though expressly inserted therein, except where a contrary intention has been manifested. *Steele v. Latimer*, Kansas Supreme Court Case No. 47,141 decided April 6, 1974 [214 Kan. 329, 521 P. 2d 304].

"4. The representations and omissions of Howard I. White, Jr., constitute reckless misrepresentations for which punitive damage will lie.

"5. Plaintiff Service Oil Co., Inc., is granted a judgment against the defendant, Howard I. White, Jr., in the sum of $3,957.35 for actual damages, and $1,500.00 for punitive damages with interest at 8% from date of judgment.

"6. The third party defendant, John T. Arnold Associates, Inc., is granted judgment against the third party plaintiff, Howard I. White, Jr., for its costs.

"7. John T. Arnold Associates, Inc., is granted judgment against Howard I. White, Jr., in the sum of Six Hundred Twenty-Eight Dollars and Eighty-Four Cents ($628.84).

"8. The Service Oil Company, Inc., is granted judgment against Howard I. White, Jr., in the amount of Five Thousand Four Hundred Fifty-Seven Dollars and Thirty-Five Cents ($5,457.35), with interest thereon at the rate of eight percent (8%) per annum, from the date hereof.

"9. John T. Arnold Associates, Inc., is given judgment against Howard I. White, Jr., for Six Hundred Twenty-Eight Dollars and Eighty-Four Cents ($628.84), with interest at the rate of eight percent (8%) per annum, from the date hereof.

"10. Costs, including the charges for the taking of the deposition of Howard I. White, Jr., are taxed against Howard I. White, Jr."

(Although the parties to this appeal do not mention it, conclusions No. 5 and No. 8 refer to the single judgment entered in favor of Service Oil Company, Inc., and conclusions No. 7 and No. 9 refer to the single judgment entered in favor of John T. Arnold Associates, Inc.)

Defendant White has challenged findings of fact No. 4, 5, 8, 11, and 12 together with conclusions of law No. 1 and 2 as not being supported by evidence. In *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 256, 531 P. 2d 428, this court set forth the following basic rules regarding appellate review of evidence:

". . . This case was tried to the court. On appeal it is not the function of the appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact. The reviewing court is concerned only with the evidence which supports the trial court's findings and not with the evidence which might have supported contrary findings. (*Rymph v. Derby Oil Co.*, 211 Kan. 414, Syl. ¶ 3, 507 P. 2d 308.) When a case is tried to the court and the evidence is heard orally the district court's findings in the case have the force and effect of a jury's verdict and if supported by substantial evidence the findings will not be disturbed on appellate review. (*McAdam v. Fireman's Fund Insurance Co.*, 203 Kan. 123, Syl. ¶ 1, 452 P. 2d 851.)" (p. 259.)

We have reviewed the record in this case and although the evidence is conflicting there is substantial evidence to support each of the findings of the trial court.

The trial court occupies a favored position in evaluating the testimony of the witnesses before it, in assessing its worth and in determining the weight to which it is entitled. (*State v. James*, 216 Kan. 235, 531 P. 2d 70.) This court will not disturb the determination made by the lower court on review of testimony.

Defendant has challenged the conclusions of law reached by the trial court and contends that he made no representations expressed or implied regarding the suitability of the leased premises for use as a gasoline station. Some general discussion of the legal principles applicable to controversies involving suitability and fitness of leased premises may be helpful before the merits of the present case are discussed.

As a general rule no covenant or implied warranty that premises shall be tenantable, fit or suitable for the lessee's use arises when premises are leased for any purpose, whether it be habitation, business or cultivation. (See *Bailey v. Kelly*, 93 Kan. 723, 145 Pac. 556; *Eskin v. Freedman*, 53 Ill. App. 2d 144, 203 N. E. 2d 24; *Taylor v. Stimson*, 52 Wash. 2d 278, 324 P. 2d 1070; *Anderson Drive-In Theatre v. Kirkpatrick*, 123 Ind. App. 388, 110 N. E. 2d 506, and 49 Am. Jur. 2d, Landlord and Tenant, § 768, p. 705.) It has been said that under normal circumstances the lessee takes the full risk as to fitness of the premises for the uses to which he intends to apply them. The doctrine of *caveat emptor* has generally been applied where a lessee has claimed that property leased by him did not conform to the requirements for which he leased it. (2 Powell, Real Property [1974] ¶ 225 [2], p. 230.)

The Kansas Supreme Court has recognized an exception to the general rule under the special circumstances set forth in *Steele v. Latimer*, 214 Kan. 329, 521 P. 2d 304, in the case of residential property. In *Latimer* residential property in the city of Wichita which was subject to prescribed minimum housing standards of the city was leased for human occupancy. The provisions of the code were deemed by implication to become a part of the lease giving rise to an implied warranty of habitability. Breach of such warranty was held sufficient to support recovery of the damages arising therefrom. The reasons for adopting the doctrine with regard to residential property are set forth in the opinion and apply to trends in the law with respect to leasing residential property.

These reasons do not apply in the case of business and commercial property for the lessee does not generally occupy an inferior bargaining position. The higher standards of personal facilities vital to public health and welfare required for residential property are not generally required for business or commercial property. We decline to engraft an implied warranty of suitability under the facts of this case upon the parties to a business or commercial lease.

The case of *Waterbury v. Riss & Company*, 169 Kan. 271, 219 P. 2d 673, cited by appellee in support of this court's recognition of an implied covenant of suitability is misplaced. We consider the reference to an implied covenant in the opinion to be dicta. In that case liability for plaintiff's husband's death was placed upon the lessor because of lessor's express agreement and subsequent failure to repair the sagging floor in the warehouse. Liability was based upon a breach of a duty arising from an express agreement with the lessee to repair the defective floor and not upon any implied covenant of suitability.

This court is convinced that the trial court was in error in basing the liability of the defendant upon the existence of an implied covenant of suitability arising with the execution of this business and commercial lease. However, if the trial court renders a correct judgment under the facts and the law, the judgment will not be disturbed merely because wrong reasons are given for its rendition. (*Wallace v. Magie*, 214 Kan. 481, Syl. ¶ 6, 522 P. 2d 989; *City of Wichita v. Boles*, 156 Kan. 619, Syl. ¶ 2, 135 P. 2d 542.)

A lessor of commercial property may not be held liable for the condition of the premises leased concerning which the lessee has the same opportunities for observation and examination prior to entering into the lease. However, the lessor may be held liable for latent defects known to the lessor and unknown to the lessee if the lessor by artifice, fraud, or reckless misrepresentations and omissions prevents the lessee from discovering the defect or knowingly fails to advise the lessee of these defects of which the lessee would not reasonably discover by the exercise of due care prior to execution of the lease. (*Eskin v. Freedman*, supra. See also *Jenkins v. McCormick*, 184 Kan. 842, 339 P. 2d 8; and *Martin v. Hughes*, 156 Kan. 175, 131 P. 2d 682.) In such cases an action may be based upon the fraud and the reckless misrepresentations and omissions of the lessor prior to the execution of a lease.

In the present case White knew that he had deeded the front ten feet of the property to the city. He knew or at least had constructive notice of the city ordinance which prohibited the operation of service stations with pumps within ten feet of the property line. He knew or reasonably should have known the pumps on the property he proposed to lease were in violation of the ordinance and could not be used. He was informed that Service Oil intended to use the premises for a service station, and in drawing the five year lease a covenant restricting the use of the premises to such in-

tended purpose was inserted. He agreed to make certain minor repairs to the premises and if the gasoline lines and tanks, necessary to operate the station, leaked he agreed to repair or replace them.

Despite this knowledge White remained silent and failed to disclose that he had deeded part of the premises included in the lease, thereby causing the location of the pumps to be in violation of the city ordinance and precluding the use of the premises as a service station without moving the pumps. Service Oil, on the other hand, had no such knowledge and a reasonable inspection of the premises disclosed that the pumps were set back fifteen feet from the sidewalk. In executing this lease White represented that he owned the paved portion of the lot including the ten foot frontage previously deeded.

Where a vendor or lessor has knowledge of a defect in property which is not within the fair and reasonable reach of the vendee or lessee and which he could not discover by the exercise of reasonable diligence, the silence and failure of the vendor or lessor to disclose the defect in the property constitutes actionable fraudulent concealment. (*Jenkins v. McCormick*, supra, Syl. ¶ 1; see also *Reeder v. Guaranteed Foods, Inc.*, 194 Kan. 386, 396, 399 P. 2d 822.)

White argues that he was unaware of the ordinance which prohibited use of his premises as a gas station. Parties to a lease are presumed to contract with reference to presently existing statutes, ordinances and regulations, the provisions of which will be read into and become a part of the contract by implication as though expressly inserted therein, except where a contrary intention has been manifested. (*Steele v. Latimer*, supra, Syl. ¶ 7.)

Defendant White was charged with the knowledge that the premises he desired to lease to Service Oil did not conform to the provisions of the city ordinance. He had originally built the station, paved the premises and personally deeded the ten foot frontage to the city. There was no change in the appearance of the premises after the deed was delivered. The property deeded remained inside the sidewalk and appeared to be part of the 100 feet of paved area leased to Service Oil.

Plaintiff Service Oil as lessee was likewise burdened with constructive notice of the ordinance requiring gas pumps to be set back ten feet from the property line. Although Service Oil was also charged with constructive notice of the ordinance, it had no knowledge that the premises violated the ordinance by reason of the loca-

tion of the pumps. It had no reason at the time the lease was executed to suspect a violation for the premises had previously been operated as a filling station and the pumps were located fifteen feet inside the sidewalks.

The rule that the contracting parties are presumed to have equal knowledge concerning the existence of ordinances in force and relevant to the contract does not cover knowledge of existing latent conditions which cause a violation of these ordinances. (*Eskin v. Freedman,* supra, p. 154.) In addition defendant, White, had an affirmative duty to speak since he knew plaintiff, Service Oil, had no actual knowledge about the latent condition of the premises. Silence may give rise to an estoppel where, under the circumstances, there should have been a disclosure. (*Bruce v. Smith,* 204 Kan. 473, Syl. ¶ 5, 464 P. 2d 224; *Bowen, Administrator v. Lewis,* 198 Kan. 706, 712, 426 P. 2d 244.)

White next contends that Service Oil waived its cause of action by moving the gas pumps to comply with the ordinance when it had been advised by White that he would not pay for such expense. No authority is cited on this point in appellant's brief and his position in this regard is unclear.

It has previously been held that continued possession by a lessee after discovery of a substantial defect may in some instances constitute waiver of a claim of constructive eviction. (49 Am. Jur. 2d, Landlord and Tenant, § 303, 304, pp. 318-319.) However, even under the doctrine of constructive eviction courts have recognized that a tenant need not always remove from the premises to preserve a cause of action against his landlord. The alternative remedy is permitted of making repairs when economically feasible and then suing to recover the cost of said repairs. (See *Marini v. Ireland,* 56 N. J. 130, 265 A. 2d 526.)

Plaintiff's theory in the present case is not predicated upon a claim of constructive eviction. The action was based upon allegations that defendant's failure to disclose a latent defect, known to defendant and unknown to plaintiff, amounted to fraudulent misconduct. Under these circumstances plaintiff should not be barred recovery because it remained in possession and did not abandon the property. It is important in this case that the trial court found that the damages sustained by Service Oil in moving the gas pumps and lines ($3,335.73) were less than the damages would have been had Service Oil chosen to cancel the lease and look for another location.

The cost of moving the gas pumps and lines was economically feasible. The cost was reasonable in comparison to the consideration which White was to receive for the station lease ( $22,500.00). There was testimony from an official of Service Oil that prior to learning of the effect of the ordinance on the station operation Service Oil had incurred expense in obtaining a survey of the premises, in searching for the non-existent stubbed-in lines, had entered into a sublease with an operator, and had incurred $621.62 in expenses by replacing a damaged overhead door, glass and building panel which White was obligated to repair under the express terms of the lease.

In addition there was testimony that it took five months to find and negotiate the present lease, that it probably would have taken an additional six months to find and negotiate a lease at another location. Ronald R. Watters, vice president of Service Oil, further testified that between its sublessee and Service Oil they could reasonably expect to make a profit of $36,500.00 a year by operating the station. Service Oil was subleasing 22 station sites which were being operated at the time this lease was negotiated. These stations served as outlets for the products of the company. We cannot say that the trial court's finding in this regard was unsupported by substantial competent evidence.

Appellant argues that the trial court's findings were inconsistent in that the court found that the damages sustained by Service Oil in moving the gas pumps were less than the damages which would have accrued had Service Oil chosen to cancel the lease, for the court also found that Service Oil failed to establish any loss of income for the period from June 1, to June 11, when the station was eventually opened for business.

We do not believe that these findings are totally inconsistent in view of the additional testimony of Ronald R. Watters that he did not know and could not say what the company's loss of profits actually was for the first ten days of June. His previous testimony as to damages in case of termination of this lease was based upon his experience in the operation of 22 other stations and was expressed in terms of average yearly profits. His conclusion, unobjected to at the trial, was that the damage to Service Oil would have been greater if the lease had been terminated instead of having the gas pumps moved.

Defendant White next contends that punitive damages should

not have been awarded in this case. He argues the general rule is that damages for breach of a contract are limited to the pecuniary loss sustained and quotes the general rule set forth in *Hess v. Jarboe,* 201 Kan. 705, 708, 443 P. 2d 294. Plaintiff Service Oil counters by quoting the exception recognized in *Jarboe* (an action based on contract) that when some independent tort or wrong results in additional injury such may justify the assessment of punitive damages by way of punishment of the wrongdoer.

In *Hess v. Jarboe,* supra, the action was brought for breach of contract and not based upon fraud or deceit. A distinction should be noted between an action for breach of contract, as in *Jarboe,* and the present action which, although arising from the execution of a lease, was grounded upon fraud because of the silence and failure of the lessor to disclose the latent defect in the property. (See *Jenkins v. McCormick,* supra, and *Martin v. Hughes,* supra.)

In an action based upon tort or fraud an element of malice, fraud or wanton disregard for the rights of others must be proved by evidence in order to substantiate an award for punitive or exemplary damages. (*Stalker v. Drake,* 91 Kan. 142, 136 Pac. 912; *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, 133 P. 2d 149; *Will v. Hughes,* 172 Kan. 45, 238 P. 2d 478; *Cope v. Kansas Power & Light Co.,* 192 Kan. 755, 760, 391 P. 2d 107; *Walker v. Fleming Motor Co.,* 195 Kan. 328, 404 P. 2d 929.)

In the present case the trial court found, "The representations and omissions of Howard I. White, Jr., constitute reckless misrepresentations for which punitive damage will lie." There was evidence that White, with knowledge of the latent defect which he had created by deeding the ten foot strip of land to the city, failed to disclose the same to Service Oil; that Service Oil had no reason to suspect that the physical premises were in violation of the city ordinances; that White knew or should have known the service station could not be placed in operation without moving the pumps; that he misled Service Oil even after the defect was discovered by advising it of stubbed-in lines for relocating the pumps when no such lines existed; that he failed and refused to make certain repairs as agreed under the lease and further refused to remedy the defect which rendered the premises unsuitable for the use to which the premises were restricted by the lease. These actions and omissions on the part of White were sufficient to support a finding of wanton misconduct and reckless misrepresentations which support the allowance of punitive damages.

Another point raised by appellant concerns the admission of appellant's deposition into evidence for impeachment purposes. The deposition was taken for discovery purposes and admitted on cross-examination while appellant was on the witness stand.

Appellant cites *Mesecher v. Cropp*, 213 Kan. 695, 518 P. 2d 504, and quotes from Syl. ¶ 2 in support of his claim that it was error to introduce the entire discovery deposition. In *Cropp* the deposition was introduced in evidence after plaintiff had closed its case in chief and after the party had testified and had been cross-examined, thus creating an erroneous impression that the deposition testimony was at a variance with the testimony given on the stand when in fact no variance existed. Such is not the case now before us.

In the present case while appellant White was on the stand he was questioned about the date on which he first had actual knowledge of the ordinance which prevented the station premises from being placed in operation. He was evasive and his answers to questions propounded to him were such that the court directed him to answer the questions rather than to engage in irrelevant voluntary discourse which did not speak to the questions propounded. After repeated attempts to obtain direct answers concerning his previous testimony in the discovery deposition, the deposition was introduced for impeachment purposes. This was proper.

The subject of the proper use of depositions was discussed in *Taylor v. Maxwell*, 197 Kan. 509, 419 P. 2d 822. Beginning at p. 512 the applicable provisions of K. S. A. 1974 Supp. 60-232 (*a*) (2) and (4) (formerly K. S. A. 60-226 [*d*] [2] and [4]), were considered and interpreted to permit any part or all of a deposition to be used against any party who was present or was represented at the taking of the deposition when the deposition evidence is admissible under the rules of evidence, such as for impeachment purposes.

In *Aspelin v. Mounkes*, 206 Kan. 132, 476 P. 2d 620, this court states:

". . . A deposition of a party containing an admission against interest is admissible, and always has been, regardless of whether the party is present at the trial, or absent from the jurisdiction (Gard, Kansas Code of Civil Procedure, anno., § 60-226, p. 139). In *Taylor v. Maxwell*, 197 Kan. 509, 419 P. 2d 822, we pointed out that K. S. A. 60-226 (*d*) (2) specifically authorizes the use by an adverse party, for any purpose, of a deposition of a *party*, without regard to the limitations applicable generally to the deposition of witnesses offered by either party." (pp. 137, 138.)

Appellant's final points on appeal concern the judgment in favor of the realtors, John T. Arnold Associates, Inc. He insists that the

trial court, having found for the plaintiff, erred in not holding Arnold responsible for all damages assessed because of Arnold's actions in negotiating and preparing the lease which failed to protect White against plaintiff's claims.

The issues raised by White on his cross-claim against Arnold were presented to the trial court. The court refused to find bad faith or breach of fiduciary duty on the part of Arnold. The judgment in favor of Arnold for the agreed commission for negotiating the lease constitutes a negative finding as to the issues presented on the cross-claim of White. The court's judgment cannot be disturbed under the evidence presented in this case.

The judgments are affirmed.

MILLER, J., not participating.